[L.A. No. 31604. Nov. 10, 1983.]

BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Plaintiff and Appellant, v.
PHILLIP GLOVER, Defendant and Respondent.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, and
Martin H. Milas, Deputy Attorney General, for Plaintiff and Appellant.

Cushman & Grover, Melvin B. Grover, Knapp, Petersen & Clarke and
Kevin J. Stack for Defendant and Respondent.

OPINION

**RICHARDSON, J.**—We consider the respective obligations of an employer, an injured employee, and an alleged third party tortfeasor within the context of a personal injury settlement between the tortfeasor and the employee and a reimbursement claim by the employer against the tortfeasor for disability retirement benefits paid to the employee.

On January 25, 1972, Irene Lavallee, an employee of the Los Angeles City School District, was severely injured when her automobile was struck by a vehicle operated by defendant Phillip Glover. Paralyzed below the waist, Lavallee applied to plaintiff Board of Administration of the Public

Employees' Retirement System (PERS) for disability retirement compensation. On November 29, 1972, PERS informed the employee by letter that any settlement which she might reach with a third party responsible for her injuries would require PERS' consent. Effective February 28, 1973, PERS awarded the employee disability retirement benefits in the amount of $22,172.99.

Meanwhile, on January 18, 1973, a few days before expiration of the one-year statute of limitations on her personal injury claim against defendant (see Code Civ. Proc., § 340, subd. (3)), the employee settled that claim for $15,000, which was the policy limit of defendant's automobile liability insurance. Without notifying PERS of the settlement or obtaining its written consent thereto, the employee executed a general release in defendant's favor.

PERS, having no independent knowledge of the settlement, did not participate in the negotiations which preceded it. Apparently, PERS was aware only of the fact of the employee's injury and of the concomitant possibility that some third party might be responsible therefor. (The stipulated record does not reflect what other information may have been conveyed to PERS in the employee's application for disability benefits.)

Similarly, at the time of settlement, neither defendant nor his insurance carrier knew of the employee's claim for disability retirement benefits or, therefore, of the possibility that PERS or any other party would have a claim for reimbursement against any settlement proceeds. Rather, defendant and his carrier entered into the settlement in good faith, believing that they had effected a full and final resolution of all claims against defendant arising out of the collision. Apparently, the settlement proceeds were paid promptly to the employee.

During the first week of March 1973 PERS learned of defendant's identity and notified him of its subrogation claim. The claim was reduced from $11,063.99—being one-half of the benefits awarded by PERS (see Gov. Code, § 21451)—to $3,171.93, reflecting the fact that a substantial portion of PERS' payment to the employee was allocable to service retirement benefits to which the employee was entitled and not, in fact, to disability retirement benefits.

Upon learning that the employee previously had settled her third party claim, and under the authority of Government Code section 21453, PERS then sued defendant pursuant to Labor Code section 3852 (unless otherwise noted, further statutory references are to that code) to recoup its payments to the employee. In relevant part section 3852 then provided: "The claim

of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, . . . may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee . . . ." Defendant cross-complained against the employee for indemnification for any judgment which might be rendered against him in the PERS action. The trial court entered judgment in favor of defendant in the primary action and in favor of the employee on his cross-complaint, reasoning that defendant should be relieved of further liability because he had settled the employee's claim in good faith and without prior knowledge of PERS' claim.

■ On appeal, PERS contends that because it did not receive the statutorily mandated notice of the settlement between defendant and the employee (see § 3860) and did not consent thereto (see § 3859), it may disregard the settlement in pursuing its statutory right of action against defendant for partial reimbursement of those benefits which PERS has paid to the employee. Defendant counters that in this case the statutory obligations to give notice to PERS and to obtain its consent should fall on the employee and not on defendant because only the employee was aware of the existence of PERS' potential claim at the time of settlement. Defendant observes, further, that while defendant had absolutely no knowledge of the possibility of a subrogation claim at the time of settlement, PERS was at least aware from the time the employee filed her application for disability retirement benefits of the possible existence of a third party who may have been responsible for such injuries. Nonetheless, PERS took no action to identify him or to give him notice of its claim.

We reject PERS' appeal, determining that the burden of a failure to comply with the notice and consent statutes must fall upon the employee and not upon the third party defendant, at least where, as here, such employee is the only party to the third party settlement who both knew of the existence of the employer's claim for reimbursement and had express and timely notice of an obligation to inform the employer of any such settlement. Having previously held that section 3852, pursuant to which PERS sued defendant, "simply gave statutory recognition to principles of equitable subrogation" (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 876, fn. 7 [140 Cal.Rptr. 638, 568 P.2d 363], and cases cited), we conclude that those principles sustain the trial court's judgment in favor of defendant.

■ Construing the workers' compensation statutory scheme, which forms the basis for PERS' rights here, within the context of injury to an

employee caused by a third party, we said in *Sanfax, supra,* at page 872, that these statutory provisions "seek to insure, first, that, regardless of whether it is the employee or the employer who sues the third party, both the employee and the employer recover their due, and, second, that, as far as possible, the third party need defend only one lawsuit." In discussing the procedures designed to enable employers and employees to share in each other's recoveries, we further observed: "To the extent that the damages which the employee recovers from a third party simply duplicate the benefits which the employee has already received from the employer, the employee's own recovery provides a fund from which the employer may draw." (*Id.,* at pp. 872-873, fn. omitted.) We pointed out that the statutory authority for the *employer* to sue the third party was necessitated by a situation in which the employee did *not* "recover the damages which the third party owes to both the employer and the employee" whether by judgment or settlement. (*Ibid.*)

In explaining in *Sanfax* that the statutes "make it possible for the third party to be held liable 'for all the wrong his tortfeasance brought about' (*Smith* v. *County of Los Angeles* [1969] 276 Cal.App.2d [156,] at p. 162), regardless of whether it is the employee or the employer who brings suit," we emphasized that "these statutes attempt to insure that '[i]n either case, single or joint plaintiffs, there results but the one *total action,* and the defendant is put to his defense but once with the *totality* of recovery for his tortfeasance at issue.' (*Id.,* at p. 164 [italics in original].)" (*Sanfax, supra,* 19 Cal.3d at p. 873.)

Our conclusion in *Sanfax* was that an employer's subrogation action was subject to the same one-year statute of limitation as that which applies to the employee's primary action against the tortfeasor. (19 Cal.3d at pp. 878-879.) The basis of that conclusion was our foregoing explanation that regardless of who sued, there was only "one *total action*" and the third party defendant could be liable only once for the consequences of his tort. (*Id.,* at p. 873, italics in original.) Because the employer/subrogee's rights thus could be no greater than the employee/subrogor's, the one-year period of limitations applicable to the employee's primary suit also must apply to the employer's subrogation suit. The same principle governs our construction of the notice and consent statutes at issue here.

■ Prior to 1971 both the employer and the employee were prohibited from settling a claim against such third party without the written consent of the other. Former section 3859 provided in relevant part: "No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both." That prohibition complemented the following relevant provisions of former section 3860:

"(a) No release or settlement under this chapter, with or without suit, is valid or binding as to any party thereto without notice to both the employer and the employee, with opportunity to the employer to recover the amount of compensation he has paid or become obligated to pay . . . [and a similar opportunity to the employee]. [¶] (b) The entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay . . . ."

In *Brown* v. *Superior Court* (1970) 3 Cal.3d 427, 431-432 [90 Cal.Rptr. 737, 476 P.2d 105], we explained that the purpose of the foregoing statutes was "to protect the rights and interests of employee and employer and to prevent or discourage either of them from obtaining a recovery from the third party at the expense or the disadvantage of the other." Accordingly, we there denied mandate to approve the employee's settlement with a third party tortfeasor which purported to be exclusive of any right to reimbursement held by the employer who had not consented thereto. (*Id.*, at p. 433.)

Thus, prior to their amendment, both sections 3859 and 3860 were construed to apply only to a settlement which covered "the totality of claims, general as well as special damages, claims for which the employee has not been compensated and seeks compensation plus claims by the employer for reimbursement for his outlay. Their purpose was to insure the non-negligent employer (or his compensation carrier) against a possibility that the employee might pocket a sum representing workmen's compensation benefits and thus jeopardize the employer's subrogated right of reimbursement." (*LaBorde* v. *McKesson & Robbins, Inc.* (1968) 264 Cal.App.2d 363, 370 [70 Cal.Rptr. 726]; see *Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977-978 [138 Cal.Rptr. 220].)

In 1971 the Legislature amended section 3859 by adding subdivision (b) which provides as follows: "Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852." At the same time, section 3860, subdivision (b), was amended to clarify that an employee's unilateral settlement with a third party tortfeasor which was made pursuant to the authority of the new amendment to section 3859 would not subject the settlement proceeds to the employer's claim for reimbursement.

The obvious purpose of these amendments was to permit an employee to segregate his own damage claim against a third party from his employer's claim against that third party for reimbursement for workers' compensation benefits paid. The employee thus is permitted to settle his own claim for a

sum exclusive of amounts he had already received in the form of a workers' compensation award without jeopardizing the employer's subrogation right. In the absence of statutory authority, we had rejected that very course in *Brown* v. *Superior Court, supra,* 3 Cal.3d at page 433, while noting, however, that "it appears that no useful purpose will be served in banning an agreement by the employee to accept a specified sum from the third party in settlement of the employee's share of the total claim free and clear from the reimbursement rights asserted by the employer," provided that the employer's rights were protected otherwise. (*Id.*, at p. 432.) Supplying both the statutory authority missing in *Brown* and the necessary safeguards, the 1971 amendments authorized an employee's settlement of his own unreimbursed claim for damages without the employer's approval and recognized the employer's independent right to proceed against the alleged tortfeasor to recover payments it had made to its employee.

As the court emphasized in *Marrujo* v. *Hunt, supra,* 71 Cal.App.3d 972, however, the exception to the rule requiring an employer's consent to an employee's settlement is a limited one. The settlement is free from the employer's claim for reimbursement only when the settlement is exclusive of the amount of workers' compensation benefits paid by his employer. (*Id.*, at p. 978; see *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222 [111 Cal.Rptr. 398] [settlement between employee and defendant without consent of employer/carrier not subject to carrier's claim for reimbursement where settlement *excluded* amount of carrier's payment to employee, thereby permitting employer/carrier's independent action against defendant].) Because, in contrast, the settlement in *Marrujo* did *not* exclude the amount of workers' compensation payments, the employee's failure to obtain the employer's consent thereto subjected the settlement proceeds to the employer's claim for reimbursement. (71 Cal.App.3d at p. 978.)

■ In the present case, as in *Marrujo*, the employee's settlement with defendant, effected without PERS' consent, did not purport to exclude the disability retirement benefits the employee received from PERS. Accordingly, under the foregoing principles, the settlement is subject to PERS' claim for reimbursement. Here, because the employee's settlement does not segregate his claim from that of his employer, neither the exception to the rule requiring employer consent nor the complementary protection of an employer's right to proceed against the third party—both embodied in section 3859, subdivision (b)—is applicable. Instead, the employer is relegated to his derivative right of subrogation which depends upon the employee's primary right to recover from the third party defendant, and which is codified in the workers' compensation statutory scheme. (The lien enforcement remedy utilized by the employer in *Marrujo* obviously is unavailable to PERS here because the settlement proceeds were paid to the employee

before PERS was aware of their existence and without suit being filed against defendant. (See § 3856, subd. (b).)

As the Court of Appeal aptly noted after an extensive analysis of the workings of subrogation in this context: "The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source." (*Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938, 952 [151 Cal.Rptr. 695].)

After reversing a county retirement association's judgment against an alleged third party tortfeasor for reimbursement of disability benefits paid by the association on the ground that the defendant wrongfully was deprived of the opportunity to contest his liability (*id.*, at p. 944), the *Pope* court cogently identified the relevant principles for the guidance of the trial court on remand: "From this analysis it follows that, regardless of substitution of parties and subrogation of claimants who have borne portions of the costs of personal injuries, all claims of third parties for damages for personal injuries to an injured person—including the employer which reimburses for lost earnings, the medical service group which provides medical care, the compensation insurance carrier which reimburses for loss of future earnings, the medical insurer which underwrites future medical care, and the pension fund or retirement association which pays benefits for loss of ability to work—derive from the injured person's claims against the tortfeasor for damages for personal injuries. (*Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 785, 787-788 . . .; *Liberty Mutual Ins. Co.* v. *Fabian* (1964) 228 Cal.App.2d 427, 432 . . . .) In their own right these claimants possess no claims of their own against the tortfeasor, for he has committed no wrong against them. Only because they have carried part of the costs of the injured person's losses do they acquire claims against the tortfeasor as subrogees to the injured person's claims for damages for personal injuries.

"An adjunct of subrogation is the rule prohibiting double recovery of damages, a rule of special importance in the prosecution of subrogation claims because the proration of damages among those who have shared the costs of personal injuries increases the possibility of duplicate claims for the same loss. Only one totality of recovery of damages for personal injuries is allowed, and only one totality of liability may be imposed on the tortfeasor. (*County of San Diego* v. *Sanfax Corp.*[, *supra*,] 19 Cal.3d 862, 873 . . .; *Smith* v. *County of Los Angeles* (1969) 276 Cal.App.2d 156, 162-164 . . . .) Duplicate recovery of damages is barred, and neither double recovery of the same item of loss nor double liability for the same item of injury is permitted. [Citations.] Whether an action is brought by an employer, a

compensation carrier, an employee, or a county retirement association, the burden on the tortfeasor remains the same. [Citations.]" (*Pope, supra,* 87 Cal.App.3d at pp. 951-952.)

█ It is apparent that realization of the goals of the foregoing subrogation rules within the context of workers' compensation law, as identified in *Sanfax* and *Pope,* is possible here only if the burden of failure to comply with the statutory obligation of notice to PERS of the employee's settlement is placed upon the employee. The fair implementation of subrogation rights within the statutory scheme, as well as general principles of equity, compel such result here. In addition to the fact, noted earlier, that the employee was the only participant in the settlement who knew of PERS' claim for reimbursement, such employee stood to obtain double recovery if she failed to notify PERS of the settlement. Relieving an employee of the obligation to report her recovery so that she might profit at the expense of another conflicts with the fundamental precept of our law that no one should be permitted to take advantage of her own wrong. (Civ. Code, § 3517.)

Conversely, imposing upon a settling third party defendant—who, it must be remembered, in the context of a settlement is merely an alleged tortfeasor—the duty to give notice under the statute or be subject to the employer's subrogation claim not only unfairly creates a legal obligation which would be impossible to fulfill where, as here, defendant was unaware of the existence of the employer subrogee, it also violates the acknowledged statutory purpose of avoiding double liability. As we noted in *Sanfax,* acts of others over whom the tortfeasor has no control, and which occur after commission of the tort, ought not to extend his liability. (19 Cal.3d at p. 877, fn. 8.)

In arguing here that the duty to notify PERS of the settlement should be imposed upon defendant whether or not he was aware of PERS' claim, PERS relies on certain language in *Pope* which suggested such a possibility. What PERS fails to acknowledge, however, is the essential distinction between *Pope* and the instant case: there the defendant was fully aware of the retirement association's payment of disability benefits to the employee and of its consequent claim for reimbursement before the defendant entered into the settlement with the employee; here defendant had no such knowledge. The distinction is crucial.

The same principles upon which we rely have resulted in similar duties to give notice in other contexts. █ Thus, the assignee of a contract right must give notice of the assignment to the obligor. If he does not do so and the obligor performs his obligation directly for the benefit of the assignor, that performance may be pleaded as a complete defense to the assignee's subsequent attempt to enforce the assignment. (See 1 Witkin, Summary of

Cal. Law (8th ed. 1973) Contracts, § 751, pp. 628-629.) More closely parallel to the present context, the recipient of Medi-Cal benefits has a statutory obligation of notifying the Medi-Cal director of any "action or claim" which the recipient may bring against a third party allegedly responsible for the recipient's medical expenditures. (Welf. & Inst. Code, § 14124.73.) Even more pertinently, in the workers' compensation context itself, if an employee brings suit against a third party tortfeasor, the employee must give written notice thereof to his employer. (§ 3853.) ▮ It was only the employee's settlement of her claim against defendant here within the one-year limitation period which permitted the employee to avoid the commencement of suit, and thus, the commensurate statutory duty to notify PERS thereof. Notice of such suit, of course, would then have permitted PERS to protect its claim by intervening therein as a party (*ibid.*), by applying for a lien on the net amount of the employee's judgment in that action (§ 3856, subd. (b)), or by bringing its own action against defendant (§ 3852). Imposing upon the employee the strictly comparable statutory duty of notice to an employer of a pre- or postsuit settlement reasonably effectuates the same statutory goal.

Moreover, our disposition fairly reconciles sections 3859 and 3860 with the principles of subrogation which underlie the workers' compensation statutory scheme in this context. Our recognition that an employer retains its right to pursue the employee in these circumstances clearly effectuates the mandate of section 3859, subdivision (a), that "No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both." In addition, our holding affords an employer the "opportunity . . . to recover the amount of compensation" it has paid (§ 3860, subd. (a)). Thus, such settlement is not "valid or binding" (*ibid.*) either *against* the party who would be affected adversely by noncompliance with the statutory notice requirement—the employer—or *in favor of* the party who could profit unfairly by such noncompliance—the employee. Rather "the entire amount of such settlement" is subject to the employer's claim. (§ 3860, subd. (b).) Finally, relieving an *unknowing* alleged tortfeasor of the consequences of the settlement's invalidity is a necessary adjunct of the rule of subrogation prohibiting both double recovery and double liability. It represents a reasonable accommodation of the statutory language to the subrogation concepts codified therein. (As to an alleged tortfeasor who is aware or reasonably should be aware of the employer's reimbursement claim at the time of settlement, the situation may well be different. (See *infra,* p. 919.))

It is not clear why PERS did not elect to join the employee in an action to recover the disability retirement benefits it had paid. Apparently, PERS, unlike the ordinary employer, cannot seek to offset its claim against any

future disability payments it will make to the employee, even in order to prevent the employee's double recovery from the tortfeasor and from PERS. (See Gov. Code, § 21453.) This statutory exception to PERS' reimbursement right provides that "recovery shall not be made *from benefits payable*" by PERS. (*Ibid.*, italics added.) However, we are aware of no statutory or other prohibition barring PERS' institution of suit directly against the employee to recover its statutory portion of the payments it has made and will make to the employee (see *id.*, § 21451) to the extent that share has been duplicated by the employee's recovery from the tortfeasor. While section 21453 does not itself expressly afford PERS a right to recover the reimbursable portion of such benefits by independent suit against the employee, the fact that this statute specifically prohibits only the offsetting of PERS' claim against "benefits payable" to the employee suggests by negative implication the availability of other means to right the wrong identified here.

Further, it is apparent that our imposition upon a knowing employee of the duty to notify PERS and obtain its consent to a settlement in these circumstances would have little consequence if that duty could be ignored with impunity. Rather, in the absence of express legislative mandate to the contrary, one is not relieved of his responsibility for his wilful acts simply by acquiring the status of an employee. (See Civ. Code, § 1714, subd. (a).) Allowing suit against such employee to enforce the obligation we have found implicit in the law of subrogation where, as here, other means are statutorily proscribed, fairly satisfies the injunction of the law to fashion a remedy for every legally cognizable wrong. (See *id.*, § 3523; *Crain* v. *Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509, 524 [123 Cal.Rptr. 419].)

On the other hand, we are not unmindful of the apparent disparity between the seriousness of the employee's injuries and the amount of the settlement exacted from defendant. Perhaps the apparent woeful inadequacy of the settlement as compared with the extremely serious injuries sustained by the employee explains PERS' election not to proceed against the employee to recover its disability payments. We observe further, however, that this settlement, like all others to which the rule we announce will apply, cannot fairly be interpreted as evidence of defendant's legal liability for the extremely serious injuries sustained. In any event, PERS' failure to seek reimbursement from the employee directly within three years after PERS' liability to make disability payments to her was fixed appears to bar any recourse against her now. (See Gov. Code, § 21455.)

Normally, however, PERS, like any other employer, could recoup its payments from an employee who settles a tort claim (which *includes* the employer's reimbursement claim) against a third party without giving the

employer notice and obtaining its written consent thereto. This clearly is so at least in cases where such employee is or reasonably should be aware of the statutory notice and consent obligations. In addition, where, as in *Pope, supra,* the third party tortfeasor prior to settlement is or reasonably should be aware of the possibility of the employer's claim, such tortfeasor may also incur liability to the employer under the statutory scheme because of his failure to notify the employer of the settlement and to obtain its consent thereto.

It would not seem burdensome for PERS or similar employers generally to identify and give prompt notice of its reimbursement claim to alleged third party tortfeasors by requiring that employees routinely include in their applications for disability (or workers') compensation benefits adequate identification of such third parties. In the absence of such notice prior to settlement, however, the employer in seeking reimbursement must be confined to its remedy against its employee.

The judgment is affirmed.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.