[Nos. A034668, A035544. First Dist. Div. Two. Feb. 25, 1988.]

Conservatorship of the Person and Estate of GARY S. EDWARDS. MARION DONOHUE, as Conservator, etc., Petitioner and Appellant, v.
HIGHLANDS UNDERWRITERS INSURANCE COMPANY, Objector and Appellant.

---

**COUNSEL**

Neil F. Horton and Johnston & Horton for Petitioner and Appellant.

Williams & Martinet, Leonard J. Martinet and Arlene Joyce for Objector and Appellant.

---

**OPINION**

**BENSON, J.**—This is an appeal from two orders of the court approving compromises of claims by a conservator of a conservatorship estate, overruling the objections of a surety to the settlements and denying the surety's claim of lien on the settlement proceeds. We reverse the orders of the trial court approving the settlements and affirm the orders denying the liens.

*Factual Background*

Clara Bell Jackson, as successor conservator of the estate of Gary S. Edwards, conservatee, filed two petitions for approval of compromises of the conservatorship estate's claims against Hibernia Bank (Hibernia) and Great Western Savings (Great Western), a Federal Savings & Loan Association. (Collectively the "banks.") Jackson succeeded Bilal H. Sabir as conservator. Sabir was appointed conservator of the estate in 1979. At that time the court ordered him to post a surety bond in the amount of $18,000. The surety, Highlands Underwriters Insurance Company (Highlands), posted the bond in December 1979.

In 1981, in accordance with the terms of a settlement of the conservatee's personal injury lawsuit, Sabir received a lump sum payment in excess of $140,000. He deposited $100,000 with Great Western and $40,000 with Hibernia. In August 1981, the banks each filed with the court agreements impounding the funds and permitting withdrawals of the funds to be made only upon order of the court.

Notwithstanding the impound agreements, both banks allowed Sabir to withdraw funds without securing any court order. Sabir also received funds belonging to the conservatorship estate from social security and from monthly annuity payments which Sabir received pursuant to the personal injury settlement. He deposited these funds in a variety of bank accounts. A small portion of these funds was spent for the benefit of the conservatee. Sabir improperly spent most of the funds.

The court suspended Sabir's powers as conservator in January 31, 1984, and appointed Jackson successor conservator on March 26, 1984. In June 1984, she filed objections to Sabir's accounts as conservator. In October 1984, she filed two actions on behalf of the estate, one against Hibernia and one against Great Western. In January 1985, the court entered its order approving a compromise of the estate's claim against Sabir which surcharged Sabir in the amount of $107,033.20. This order provided it was without prejudice to the rights of the banks in the two actions filed against them by Jackson.

On March 26, 1985, Jackson filed a motion to enforce the $18,000 bond against Highlands. Initially, Highlands objected to the motion on the grounds that the actions filed by Jackson against the banks were pending, that Highlands had cross-complained in those actions,[1] and that it was more appropriate that Highlands's rights to subrogation be determined in those actions. Highlands requested that, should the court require it to pay the bond, the court should order that the surety is subrogated to the rights of the estate against Sabir and the banks. The parties then stipulated that Highlands would pay the $18,000. The order of the court based upon the stipulation provided that "Pursuant to making such payment, HIGHLANDS shall enjoy all rights to subrogation or other indemnity, provided by law."

In July 1985, Jackson filed a petition for an order authorizing her to compromise the estate's claim against Hibernia for the sum of $45,000. She determined the total amount the estate could recover from Hibernia was $47,397.90. Highlands filed partial objections to the petition claiming a

---

[1] Highlands had been joined in both actions on cross-complaints by Hibernia and Great Western.

right to subrogation against Hibernia and a right to a lien against the settlement funds in the amount of $18,000 paid to the estate or in an amount in proportion to the ratio of the amount of the settlement to the total amount of loss to the estate. Jackson sought sanctions against Highlands under Code of Civil Procedure section 128.5 on the grounds the claim of lien was meritless and made in bad faith. The court granted the petition, overruled the objections and denied the request for sanctions against Highlands. Highlands appealed from this order. Jackson cross-appealed from the portion of the order denying her request for sanctions against Highlands.

In January 1986, Jackson filed a petition for an order authorizing her to compromise the estate's claim against Great Western and authorizing her to place $18,000 from the settlement proceeds to be paid by Great Western into an interest-bearing blocked account in the name of the conservator to be withdrawn only upon further order of the court following the disposition of Highlands's appeal from the order approving the Hibernia settlement. The petition stated the conservator estimated the estate could recover $53,372.75 from Great Western and sought approval for a compromise of the claim for the amount of $42,500. Jackson claimed a shortfall of $10,757.38 from both settlements before the estate would be made whole. Highlands again filed objections to the petition claiming a priority to receive the first $18,000 from the settlement. The court granted the petition, overruled the objections and ordered the $18,000 placed in an interests bearing blocked account pending the determination of Highlands's appeal of the prior order. Highlands also appealed from this order. Jackson again filed a cross-appeal which stated she appealed from a denial of her request for sanctions against Highlands. No such request was made by Jackson in the trial court. The appeals and cross-appeals have been consolidated by this court. Marion S. Donohue has been appointed successor conservator of the estate. Donohue has been substituted as respondent and cross-appellant in this appeal.

### Contentions on Appeal

Highlands claims it is the subrogated owner of the estate's claims against the banks to the extent of its $18,000 payment on the bonds. It asserts that it has superior equities to the banks'. It argues that the rule against pro tanto subrogation which would preclude its recovery until the estate is made whole should not apply where the third party tortfeasor is solvent. Highlands asks this court to reverse the portion of the trial court orders denying its requests for a lien on the proceeds of the estate's settlements with the banks and either to determine Highlands is owed approximately $11,000 or to remand the matter to the trial court for a determination of the precise amount of Highlands's subrogation interest in the settlements with

directions that an order be entered directing the estate to pay Highlands that amount.

The conservator points out that Highlands has no contractual right to subrogation and contends its claim of equitable subrogation fails because the debt to the estate has not been fully discharged. He claims the trial court erred as a matter of law in denying the request for sanctions against Highlands with respect to its objections to the petition to compromise the claim against Hibernia. He admits sanctions were not sought in the proceedings on the compromise of the claim against Great Western. He now seeks sanctions against Highlands for filing a frivolous appeal.

*Discussion*

■ Highlands asked the trial court to grant it a lien against the settlement funds to be received by the estate on the grounds that it had priority in subrogation over the claim of the estate against the banks. The conservator argued that Highlands was not entitled to a subrogation claim and, even if it were, it could not recover from the estate because the estate had not been made whole by the settlements.

■ On appeal, Highlands correctly asserts that in equity the payment on a surety bond creates an assignment of a portion of the estate's claim against the banks by operation of law and no formal assignment or transfer is necessary. (*Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 94-95 [77 P.2d 1084]; *Snider* v. *Basinger* (1976) 61 Cal.App.3d 819, 824 [132 Cal.Rptr. 637].) Highlands properly sought a determination of its right to partial subrogation by filing cross-complaints against the banks in the two actions brought by the conservator of the estate against the banks. A surety which has made a partial payment of a loss may join with its insured in suing a party liable for the loss. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 113, pp. 148-149; *Phillips* v. *Western Pacific R.R. Co.* (1971) 22 Cal.App.3d 441, 445 [99 Cal.Rptr. 451]; *Hausmann* v. *Farmers Ins. Exchange* (1963) 213 Cal.App.2d 611 [29 Cal.Rptr. 75].) ■ Highlands also correctly states that for the surety to recover from the banks in those actions under the principles of equitable subrogation, it would have to prove it had equities superior to the banks. (*Continental Ins. Co.* v. *Morgan, Olmstead, Kennedy & Gardner, Inc.* (1978) 83 Cal.App.3d 593, 602-604 [148 Cal.Rptr. 57].)

■ Highlands claims the conservator of the estate may not negotiate and compromise the estate's claims against third parties after receiving partial payment from a surety and then deny the surety's right to a share of the proceeds of the settlement on the grounds the estate has not been made

whole by its own negotiated compromises. Highlands reasons that the estate's loss is made up of severable claims consisting of two claims against the banks totaling approximately $100,000 and about $7,000 against Sabir alone for the other funds taken from the estate. The surety claims a percentage interest in each recovery by the estate on the grounds that, had the conservator not agreed to take less than the estate's claims from the banks, the estate would have recovered more than its total loss and clearly would have had to reimburse the surety the excess amount it received.

In their memoranda filed with the trial court, neither party discussed the issue of whether the settlement by the estate would affect the subrogation claims of the surety set forth in its cross-complaints filed in the estate's actions against the banks. During oral argument on the petition to approve the compromise with Hibernia, Highlands's counsel reported to the court that "We received a letter that, all of a sudden, the conservatorship has settled the case and they had not consulted us as to either the amount or the formula [by] which this was resolved—none whatsoever." Hibernia's counsel stated the offer to settle with the estate was conditioned upon dismissal of the surety's cross-complaint against the bank as well as dismissal of the estate's complaint against Hibernia. The court noted that such a stipulation would cost the bonding company money. Counsel for the conservator commented that this was the first time he had heard that Hibernia's offer was conditioned upon dismissal of the cross-complaint. The court replied that the issue of whether the cross-complaint was to be dismissed was important but he found it "repugnant" that Hibernia raised the issue for the first time at the hearing.

Hibernia's counsel responded that she believed she had made it clear to the conservator's counsel during the negotiations that the bank wanted the cross-complaint of the surety dismissed as part of the settlement. She pointed out that the bank was paying almost 100 percent of the claim and that the bank was "at this point, a good-faith settling tortfeasor" and it should not be incumbent upon the bank to determine whether the estate or the surety should receive money from the settlement. She also argued that the surety's right to subrogation had not yet ripened since the estate was not yet made whole and suggested that should the estate be made whole by a recovery from Great Western, then the surety could look to that recovery for repayment.

Nothing further was said on the issue. No proposed settlement agreement was presented to the court. The conservator, however, has not argued that the release was other than a total release of all claims. The court's minute order dated November 8, 1985, merely approved the settlement and overruled the objections.

The record shows Hibernia must have reached a settlement agreement with the conservator before Highlands had paid the estate the $18,000 on the bond since the first payment on the settlement was made about three weeks before Highlands paid and about ten days before the petition for approval of the compromise was filed with the court. At the time Hibernia made its first payment, however, Hibernia already knew of Highlands's possible subrogation claim since Highlands had filed a cross-complaint against the bank. The then conservator, when she received Hibernia's first payment, also knew the estate would receive $18,000 from Highlands because she already had signed a stipulation with Highlands that it would pay on the bond and the court had so ordered. Similarly, at the time of the conservator's settlement with Great Western, payment had been made by Highlands to the estate and Great Western was aware of the surety's claim of subrogation because of its cross-complaint in the action against Great Western. These facts raise serious questions of whether the settlements were made in good faith or whether there was collusion on the part of the settlors to eliminate the $18,000 claim by the surety.

The conservator relies upon the general American rule that an insurer which pays a portion of the debt owed the insured is not entitled to pro tanto subrogation until the debt is fully discharged. (*Finnell* v. *Goodman & Co. Bank* (1909) 156 Cal. 18, 24 [103 P. 483]; *Henshaw* v. *Homeland Co.* (1918) 177 Cal. 381, 384 [170 P. 826]; *Patek* v. *California Cotton Mills* (1935) 4 Cal.App.2d 12, 15-16 [40 P.2d 927]; and *Chase* v. *National Indemnity Co.* (1954) 129 Cal.App.2d 853, 861-862 [278 P.2d 68].) While these cases state the rule for which they are cited, none involves the issue presented in this action; specifically, what are the rights of the surety where an insured, without the consent of the surety which is also a party to the insured's actions against the tortfeasors, has settled with third party tortfeasors for an amount which when added to the sum paid by the surety will not compensate the insured for its entire loss.

The parties have not cited us to any California case deciding this issue. We have found none.

We hold that the orders of the probate court approving settlements with the banks must be reversed. These orders were entered prematurely since no determination had been made in the actions pending against the banks as to whether the surety was entitled to recover from the banks on the cross-complaints filed in those actions or whether the surety had a claim against the estate because of its settlement with the tortfeasors without the consent of the surety. This determination must be made in the actions filed against the banks where all parties are before the court. Only after it is decided whether the estate must reimburse the surety, could the probate court be in

a position to determine whether the settlement would be in the best interests of the conservatee.

■ Highlands incorrectly assumes it is barred from seeking recovery from the banks by the general release given by the estate even if it were shown that the banks settled with knowledge that the estate had or was about to receive partial payment from the surety. Highlands relies on the ordinary principles of subrogation to the effect that an insurer stands in the shoes of its insured and if an action of the insured is barred so also is the action of the insurer. (*Community Nat. Bank* v. *Fidelity & Deposit Co.* (9th Cir. 1977) 563 F.2d 1319, 1323, fn. 5.) California, however, recognizes an exception to this general rule that "where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer, such release of the tortfeasor does not bar the right of subrogation of the insurer." (16 Couch on Insurance (2d ed. 1983) § 61.201, p. 262; *Steigerwald* v. *Godwin* (1956) 144 Cal.App.2d 591, 595 [301 P.2d 386]; *Mitchell* v. *Holmes* (1935) 9 Cal.App.2d 461, 463-464 [50 P.2d 473]; 6A Appleman, Insurance Law and Practice (1972) § 4092, pp. 244-249; Annot. (1963) 92 A.L.R.2d 102 and Later Case Service.)

Two California cases brought under the statutory subrogation provisions of the Workers' Compensation Act (Lab. Code, §§ 3850-3864) have recognized the right of a surety to claim reimbursement from either its insured or a third party tortfeasor that has settled in bad faith. In *Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938, 952-953 [151 Cal.Rptr. 695], the court held that the claim of the injured party and the claim of any subrogee of the injured party must be determined in the same action. The court declared that when an alleged tortfeasor settles with the injured party with knowledge the injured party has applied to the Retirement Association for benefits, thus giving rise to a possible right to subrogation, and then proceeds with the settlement without giving notice to the Association, it settles at its peril and may be liable again to the association without credit for its payment to the injured party.

On the other hand, where the tortfeasor settles with an insured in good faith without knowledge that the insured has received benefits from the insurer, the insurer's right to recovery from the tortfeasor is barred but the insurer may be able to recover from its insured. In *Board of Administration* v. *Glover* (1983) 34 Cal.3d 906 [196 Cal.Rptr. 330, 671 P.2d 834], the Public Employees' Retirement System (PERS) brought suit against a third party tortfeasor to recover disability benefits it had paid to a county employee who was injured when her automobile was struck by a vehicle operated by the defendant. PERS initiated the suit after it learned that the employee had settled her claim with the third party. The employee had failed to notify

PERS of the settlement prior to executing a general release in defendant's favor and had failed to obtain PERS's consent. The trial court found in favor of the defendant.

Our Supreme Court held that principles of equitable subrogation sustained the trial court's judgment in favor of the defendant on the grounds that if PERS were entitled to recovery it must be against the employee since the evidence showed that the employee was the only participant in the settlement who knew of her employer's claim for subrogation rights. (*Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, 916.) The Court also stated the liability of the tortfeasor and the totality of recovery for the tortfeasance at issue, including any subrogation rights, should be determined in one action. (*Id.* at p. 912.)

The action was brought by PERS under section 3852 of the Labor Code which gives an employer that has compensated an employee a right to bring an action against a third party tortfeasor. This section has been held to give statutory recognition to the principles of equitable subrogation. (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 876, fn. 7 [140 Cal.Rptr. 638, 568 P.2d 363].)

Courts in other jurisdictions have reached the same conclusion that the rights of the surety should be determined in the actions against the tortfeasors. The rights of an insurer against a settling tortfeasor are discussed in 16 Couch, *supra,* sections 61:194 - 61:211, pages 250-274. Section 61:198 provides, "After the insurer has intervened in an action by the insured against the wrongdoer, and has shown a monetary interest in the result thereof, the court will not permit a settlement between the insured and the wrongdoer to the detriment of the insurer, but will protect the rights of all parties." (*Id.* at p. 261; accord *Morgan* v. *General Insurance Company of America* (Fla.App. 1965) 181 So.2d 175, 177-178; 6A Appleman, *supra,* § 4094, at p. 274.)

■ Since we have determined the motion for approval of the settlement by the probate court was premature, we also determine that the surety's motion for a lien on the settlement proceeds was premature. A party having only a prospective right of subrogation is not entitled to a lien on settlement proceeds. (*Hausmann* v. *Farmers Ins. Exchange, supra,* 213 Cal.App.2d 611, 615.) From our determination that the orders approving the settlements must be reversed, it follows that the requests for sanctions for filing of a frivolous motion and a frivolous appeal are meritless.

The orders of the trial court approving the settlements of the conservator of the estate with Hibernia and Great Western are reversed. The orders

denying the surety a lien and denying sanctions to the conservator are affirmed. The order requiring the estate to place $18,000 in a blocked account expires by its terms when this appeal becomes final. Highlands is awarded its costs on appeal.

Kline, P. J., and Rouse, J., concurred.