[No. F023537. Fifth Dist. Oct. 15, 1996.]

INSURANCE COMPANY OF NORTH AMERICA, Plaintiff and
Appellant, v.
T.L.C. LINES, INC., et al., Defendants and Respondents.

**COUNSEL**

Steven B. Simon and Lawrence P. Perle for Plaintiff and Appellant.

Clifford & Brown, Gregory A. Pulskamp and Stephen Wainer for Defendants and Respondents.

## OPINION

## HARRIS, J.—

### PROCEDURAL HISTORY AND FACTS

This case arises out of a December 19, 1990, vehicular accident near Bakersfield, California, in which one Lonnie Ray Guidry and also apparently his wife, Nancy Guidry, received injuries. On December 10, 1991, appellant Insurance Company of North America (hereinafter INA) filed the instant action in the Kern County Municipal Court against respondents T.L.C. Lines, Inc., and Lawrence Edward Barrows (hereinafter collectively TLC). The complaint alleged that on or about December 10, 1990, "defendants" recklessly, carelessly and negligently operated their tractor-trailer rig so as to cause it to collide with another vehicle, causing injuries to Lonnie Guidry. Pursuant to state workers' compensation law, INA had (as of the date of filing) paid benefits to and for Guidry in the amount of $4,766.71, and INA anticipated further such payments. The complaint sought recompense from TLC for such amounts already expended and "as may be expended" prior to satisfaction of judgment, plus attorney fees, costs, and prejudgment interest.

On December 29, 1993, this case was transferred to the superior court based on the declaration of INA's counsel that workers' compensation benefits paid now totaled $24,299.47 and "there are liens totaling over $16,000.00 that this party is responsible for negotiating and paying."

On July 27, 1994, the parties stipulated that the matter be tried by way of court trial based on a statement of agreed facts. The facts, as agreed to by the parties, are as follows:

"1.  On December 10, 1990, Defendant **Lawrence Edward Barrows** (hereinafter '**BARROWS**') while in the course and scope of his employment with Defendant T.L.C. Lines, Inc. (hereinafter '**T.L.C.**'), negligently caused an accident with a vehicle operated by Lonnie Ray Guidry which resulted in personal injuries to Mr. Guidry.

"2.  On May 23, 1991, Lonnie Ray Guidry agreed to settle all of his claims against **BARROWS** and **T.L.C.** for $12,000.00. This agreement was

consummated when the insurance carrier on behalf of the defendants paid $12,000.00 to Mr. Guidry and both Mr. and Mrs. Guidry executed a Release agreement (a copy of which is attached as Exhibit 'A') on June 5, 1991, which released **BARROWS** and **T.L.C.** and their insurance carrier from all claims arising out of the accident on December 10, 1990.

"3. The settlement between Lonnie Ray Guidry and the defendants herein was entered into in good faith on the part of the defendants and their insurance carrier without knowledge that Mr. Guidry was in the course and scope of his employment and without knowledge that Mr. Guidry would or could file a Worker's Compensation claim as a result of the accident on December 10, 1990.

"4. After Lonnie Ray Guidry settled his claim with the defendants herein, he proceeded to file a Worker's Compensation claim for his injuries arising out of the accident on December 10, 1990. Plaintiff, **Insurance Company of North America** (hereinafter 'INA') was the Worker's Compensation insurance carrier for Lonnie Ray Guidry's employer at the time of the accident on December 10, 1990.

"5. By letter dated July 12, 1991, **INA** notified the insurance carrier for the defendants herein of the Worker's Compensation claim of Mr. Guidry and of their intent to recoup their payments to Mr. Guidry. This letter was the first notification to anyone on behalf of the defendants of the Worker's Compensation claim by Lonnie Ray Guidry.

"6. Plaintiff, **INA**, received a credit of $12,000.00 in the amounts it was required to pay to Lonnie Ray Guidry which represented the amount received by Mr. Guidry in his settlement with the defendants herein. After this credit was taken into account, Plaintiff paid an additional $27,730.97 in benefits to Lonnie Ray Guidry which were reasonably and necessarily incurred as a result of the accident on December 10, 1990.

"7. Plaintiff, **INA**, filed its Complaint To Recover Benefits under Labor Code 3852 on December 10, 1991, which was within the one year statute of limitations for filing such actions."

There was no other evidence presented and the trial court made no factual findings; the above quotation from the record may thus be taken as a complete statement of facts.

The case was briefed by the parties, argued before Judge Arthur E. Wallace on September 29, 1994, and submitted. Judge Wallace subsequently

ruled by minute order, finding that the settlement was entered into by TLC "in good faith and without any knowledge or notice of a potential for a worker's compensation claim being filed by [Guidry]. [¶] [INA] has received full benefit of the settlement by setting it off against it's [*sic*] total worker's compensation liability and although [they] are, by virtue of the release of [TLC], precluded from making a further claim against [TLC], this is compatible with their derivative right of subrogation, since the party to whose rights they are subrogated [Guidry] is likewise precluded."

A formal judgment was entered on January 12, 1995, the court ordering that INA "take nothing by way of its complaint filed herein and [TLC] recover from the plaintiff, [INA], their costs."

Notice of entry of judgment was served by TLC on February 6, 1995. INA filed a timely notice of appeal on April 4, 1995.

## DISCUSSION

■ The instant case involves the interpretation and application of certain statutes, as well as the application of certain legal principles, in the context of stipulated facts. Consequently, the case presents purely legal issues, which we review de novo on appeal. (See *State Farm Mut. Auto. Ins. Co.* v. *Messinger* (1991) 232 Cal.App.3d 508, 513 [283 Cal.Rptr. 493].) ■ The core issue presented is whether the trial court erred in finding that the good faith settlement between respondents and Guidry barred INA from recovery.

Appellant INA contends that the release only bars Guidry from further proceeding against respondents and has no effect on its claim; INA's claim for recovery is not a "derivative" right of subrogation but a "separate and distinct claim of indemnification against a third party," and that having filed its complaint within the one-year statute of limitations, liability and damages having been stipulated to, "this is all that is necessary for INA to fully prevail on its claim." INA further argues that *Board of Administration* v. *Glover* (1983) 34 Cal.3d 906 [196 Cal.Rptr. 330, 671 P.2d 834] relied on by the trial court is factually distinguishable and thus not controlling.

Respondents TLC, on the contrary, contend that *Glover* is controlling; that INA's claim is subject to the principle of equitable subrogation and is derivative, involving no more than a succession to Guidry's rights; that Guidry's settlement did not segregate his claim from that of INA's; and that because Guidry is precluded by the settlement from pursuing any further claim against respondents, INA is likewise precluded. We will conclude that respondents' position is correct and affirm.

*Statutory Provisions*

Labor Code[1] section 3850 et seq. governs the subrogation of an employer's claim for reimbursement of workers' compensation benefits. By definition, "employer" includes the employer's workers' compensation insurer —in the instant case, INA. (§ 3850, subd. (b).) Consequently, any references to "employer," either in the statutes or in the discussion, should be construed as referring to INA, the workers' compensation carrier herein. Similarly, any references to "third person" will, for purposes of this action, be treated as references to TLC, the tortfeasor.

Section 3852 of the Labor Code authorizes an employer who becomes liable to pay workers' compensation benefits to initiate an action against the alleged wrongdoer: "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. *Any employer who pays, or becomes obligated to pay compensation . . . may likewise make a claim or bring an action against the third person.* In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents. . . ." (Italics added.)

Sections 3859 and 3860 deal with the effect of a settlement by either the employee or the employer with the third person. Section 3859 provides:

"(a) No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both. . . .

"(b) Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852."

Section 3860 provides in pertinent part:

"(a) No release or settlement under this chapter, with or without suit, is valid or binding as to any party thereto without notice to both the employer and the employee, with opportunity to the employer to recover the amount of

---

[1]All statutory references are to the Labor Code unless otherwise specified.

compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, and opportunity to the employee to recover all damages he has suffered and with provision for determination of expenses and attorney's fees as herein provided.

"(b) Except as provided in Section 3859, the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, . . ."

In *Glover,* the California Supreme Court, after discussing the history of the sections, set forth the purpose and effect thereof, as follows:

"In 1971 the Legislature amended section 3859 by adding subdivision (b) which provides as follows: 'Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852.' At the same time, section 3860, subdivision (b), was amended to clarify that an employee's unilateral settlement with a third party tortfeasor which was made pursuant to the authority of the new amendment to section 3859 would not subject the settlement proceeds to the employer's claim for reimbursement.

"The obvious purpose of these amendments was to permit an employee to segregate his own damage claim against a third party from his employer's claim against that third party for reimbursement for workers' compensation benefits paid. The employee thus is permitted to settle his own claim for a sum exclusive of amounts he had already received in the form of a workers' compensation award without jeopardizing the employer's subrogation right. . . .

"As the court emphasized in *Marrujo* v. *Hunt* [(1977)] 71 Cal.App.3d 972 [138 Cal.Rptr. 220], however, the exception to the rule requiring an employer's consent to an employee's settlement is a limited one. The settlement is free from the employer's claim for reimbursement only when the settlement is exclusive of the amount of workers' compensation benefits paid by his employer. (*Id.,* at p. 978; [citation].) Because, in contrast, the settlement in *Marrujo* did *not* exclude the amount of workers' compensation payments, the employee's failure to obtain the employer's consent thereto subjected the settlement proceeds to the employer's claim for reimbursement. (71 Cal.App.3d at p. 978.)

"In the present case, as in *Marrujo*, the employee's settlement with defendant, effected without PERS' consent, did not purport to *exclude* the disability retirement benefits the employee received from PERS. Accordingly, under the foregoing principles, the settlement is subject to PERS' claim for reimbursement. Here, *because the employee's settlement does not segregate his claim from that of his employer, neither the exception to the rule requiring employer consent nor the complementary protection of an employer's right to proceed against the third party—both embodied in section 3859, subdivision (b)—is applicable.* Instead, the employer is relegated to his *derivative right of subrogation which depends upon the employee's primary right to recover* from the third party defendant, and which is codified in the workers' compensation statutory scheme." (34 Cal.3d at pp. 913-914, italics added.)

*Primary Case Law*

The trial court expressly based its conclusion that INA could not pursue its action against TLC on one case, *Board of Administration* v. *Glover, supra,* 34 Cal.3d 906, finding it "controlling."

In *Glover*, a school district employee was injured when struck by a vehicle driven by Glover. She applied to the Public Employees' Retirement System (PERS) for disability retirement payments. Some 10 months after the accident, PERS advised her that any settlement she reached with a third party tortfeasor would require PERS's consent. Within days of expiration of the one-year statute of limitations on her claim against Glover (Code Civ. Proc., § 340, subd. (3)), and without notice to PERS, she settled the claim for $15,000 and executed a general release in Glover's favor. Glover had no notice that the injured employee had a claim for benefits with PERS at the time of the settlement and release, and entered into the settlement with the good faith belief it was effecting a full and final resolution of all claims arising from the accident.

PERS awarded the injured employee over $22,000 in benefits and only afterward learned about the settlement. On identifying Glover as the third party involved in the accident, PERS promptly notified him of its subrogation claim, which (for reasons not relevant here) had been reduced to just over $3,000. PERS then filed suit against Glover pursuant to section 3852. The trial court ruled in Glover's favor, "reasoning that defendant should be relieved of further liability because he had settled the employee's claim in good faith and without prior knowledge of PERS' claim." (34 Cal.3d at p. 911.)

PERS argued on appeal that because it neither received notice of (§ 3860) nor consented to (§ 3859) the settlement, it could disregard the settlement in seeking reimbursement from Glover. The Supreme Court rejected the contention, "determining that the burden of a failure to comply with the notice and consent statutes must fall upon the employee and not upon the third party defendant, at least where, as here, such employee is the only party to the third party settlement who both knew of the existence of the employer's claim for reimbursement and had express and timely notice of an obligation to inform the employer of any such settlement." (*Board of Administration* v. *Glover, supra*, 34 Cal.3d at p. 911.)[2]

*Parties' Positions*

INA herein contends that the trial court erred in relying on *Glover*, claiming the holding of that case is a "very narrow" one, and presumed the settling employee had "express and timely notice of an obligation to inform the employer of" the settlement. In the instant case, there is no evidence as to Guidry's knowledge at the time of the settlement of the potential for a compensation claim,[3] nor was there evidence that INA had notified Guidry of his obligations prior to settlement.

---

[2]*Glover* dealt with a situation in which the settlement "did not purport to exclude the . . . benefits the employee received from [the employer]." (34 Cal.3d at p. 914.) If the settlement *had* excluded such benefits, PERS apparently would have had an unquestioned right to bring an independent action for reimbursement against the alleged tortfeasor. (See *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 229 [111 Cal.Rptr. 398], cited with apparent approval in *Board of Administration* v. *Glover, supra*, 34 Cal.3d at p. 914; see also *O'Dell* v. *Freightliner Corp.* (1992) 10 Cal.App.4th 645, 657 [12 Cal.Rptr.2d 774]; *San Diego Unified Port Dist.* v. *Superior Court* (1988) 197 Cal.App.3d 843, 849 [243 Cal.Rptr. 163].) As in *Glover*, the instant settlement "did not purport to exclude" compensation benefits; indeed, it was silent on the question. Appellant's attempt to read the language in the release stating, "This release applies ONLY to Lonnie Ray Guidry's injuries" as purporting to exclude compensation benefits and thus constituting the settlement as segregated within the meaning of section 3859, subdivision (b), must fail. First, there is nothing in the quoted language which purports to exclude any employer claim for compensation benefits or indicates that the settlement is subject to the employer's right to proceed to recover compensation benefits he has paid or, in fact, any language that can reasonably be interpreted as such. Second, the claim that the quoted language was specifically intended by the parties to the settlement to exclude compensation benefits and protect the employee's right to recover them is entirely improbable considering the stipulated facts that the settlement and release were entered into without defendant's knowledge that Guidry was in the scope of his employment or would or could file a worker's compensation claim as a result of the accident. While we are not prepared to say exactly what threshold language would be sufficient to accomplish such purpose, we can say with certainty that it does not appear here.

[3]INA contends that "Guidry had no knowledge that he had a workers' compensation claim until after his settlement with [TLC] . . . ." The record fails to support this assertion. Rather, the stipulation is silent as to Guidry's knowledge of any potential compensation claim at the

INA further points out that in *Glover*, PERS knew of at least the potential for a cause of action against a third person within the one-year statute of limitations, yet failed to take action to protect its rights. INA suggests, without citation, that the *Glover* court's concern with equity made this lack of diligence material to its ruling. Here, by way of contrast, INA did bring suit against TLC within the statutory period.

On the other hand, TLC contends that both law and public policy require that its good faith entry into the settlement and release be upheld. It argues that settlements are favored in California (see, e.g., *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231 [132 Cal.Rptr. 843]), and points to the statement in *Glover* that "regardless of who sued, there was only 'one *total action*' and the third party defendant could be liable only once for the consequences of his tort." (*Board of Administration* v. *Glover, supra*, 34 Cal.3d at p. 912, quoting *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 873 [140 Cal.Rptr. 638, 568 P.2d 363].) Thus, since the "one total action" in this case was extinguished at the time of Guidry's settlement and release, INA has no remaining cause of action against TLC.

*Analysis*

There is admittedly some basis for INA's contention that the "holding" in *Glover* is arguably limited to a fairly narrow set of facts: "[T]he burden of a failure to comply with the notice and consent statutes must fall upon the employee and not upon the third party defendant, *at least where, as here, such employee is the only party to the third party settlement who both knew of the existence of the employer's claim for reimbursement and had express and timely notice of an obligation to inform the employer of any such settlement.*" (34 Cal.3d at p. 911, italics added.)

Later in the opinion, the court again appears to limit the holding to the facts: "It is apparent that realization of the goals of the foregoing subrogation rules within the context of workers' compensation law . . . is possible *here* only if the burden of failure to comply with the statutory obligation of notice to PERS of the employee's settlement is placed upon the employee. The fair implementation of subrogation rights within the statutory scheme, as well as general principles of equity, compel such result here. In addition to the fact, noted earlier, that the employee was the only participant in the settlement who knew of PERS' claim for reimbursement, such employee stood to obtain double recovery if she failed to notify PERS of the settlement. Relieving an employee of the obligation to report her recovery so that

---

time of the settlement and release. INA's attempts to bolster the claim through citation to its own trial brief and statements made by counsel at trial are of no weight.

she might profit at the expense of another conflicts with the fundamental precept of our law that no one should be permitted to take advantage of her own wrong. (Civ. Code, § 3517.)" (34 Cal.3d at p. 916, italics added.)

Similarly, near the end of the opinion, the *Glover* court states: "Normally, however, PERS, like any other employer, could recoup its payments from an employee who settles a tort claim (which *includes* the employer's reimbursement claim) against a third party without giving the employer notice and obtaining its written consent thereto. This clearly is so at least in cases where such employee is or reasonably should be aware of the statutory notice and consent obligations. . . ." (34 Cal.3d at pp. 918-919, italics in original.)

On the other hand, and of overriding significance, *Glover* also includes language indicating rather clearly that an alleged tortfeasor who, in good faith and *without knowledge of the existence of a potential compensation claim*, secures a release is shielded thereby from future liability.

"[I]mposing upon a settling third party defendant—who, it must be remembered, in the context of a settlement is merely an alleged tortfeasor—the duty to give notice under the statute or be subject to the employer's subrogation claim not only unfairly creates a legal obligation which would be impossible to fulfill where, as here, defendant was unaware of the existence of the employer subrogee, it also violates the acknowledged statutory purpose of avoiding double liability. As we noted in *Sanfax*, acts of others over whom the tortfeasor has no control, and which occur after commission of the tort, ought not to extend his liability. (19 Cal.3d at p. 877, fn. 8.)

"In arguing here that the duty to notify PERS of the settlement should be imposed upon defendant whether or not he was aware of PERS' claim, PERS relies on certain language *in [Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938 (151 Cal.Rptr. 695)] which suggested such a possibility. What PERS fails to acknowledge, however, is the essential distinction between *Pope* and the instant case: there the defendant was fully aware of the retirement association's payment of disability benefits to the employee and of its consequent claim for reimbursement before the defendant entered into the settlement with the employee; here defendant had no such knowledge. The distinction is crucial." (34 Cal.3d at p. 916.)

"Finally, relieving an *unknowing* alleged tortfeasor of the consequences of the settlement's invalidity is a necessary adjunct of the rule of subrogation prohibiting both double recovery and double liability. It represents a reasonable accommodation of the statutory language to the subrogation concepts

codified therein. (As to an alleged tortfeasor who is aware or reasonably should be aware of the employer's reimbursement claim at the time of settlement, the situation may well be different. . . .)" (34 Cal.3d at p. 917, italics in original.)

"In addition, where, as in *Pope, supra,* the third party tortfeasor prior to settlement is or reasonably should be aware of the possibility of the employer's claim, such tortfeasor may also incur liability to the employer under the statutory scheme because of his failure to notify the employer of the settlement and to obtain its consent thereto." (34 Cal.3d at p. 919.)

In our view, the holding in *Glover* stands for the general proposition that an employer which is not given notice of a nonsegregated[4] settlement (in the instant case, INA) has a cause of action against the settling third party alleged tortfeasor (here, TLC) *if and only if* that third party knew or should have known of the existence of or potential for a compensation claim and failed to notify the employer. In other cases, the good faith settlement and release will serve to protect the third party from further liability, and the employer's rights will be limited to recovery from the employee (Guidry) or credit against the settlement proceeds. This conclusion, although not expressly spelled out, is easily inferred from the various portions of the opinion set forth above. We note that at least one other court has similarly summarized the holding in *Glover.* In *Conservatorship of Edwards* (1988) 198 Cal.App.3d 1176 [244 Cal.Rptr. 330], the court cited *Glover* for the proposition that ". . . where the tortfeasor settles with an insured in good faith without knowledge that the insured has received benefits from the insurer, the insurer's right to recovery from the tortfeasor is barred but the insurer may be able to recover from its insured." (198 Cal.App.3d at p. 1184.)

INA's efforts to distinguish *Glover* focus on the fact that in *Glover* the employee was receiving benefits at the time of the settlement and "PERS did not perfect its subrogation rights within the one-year statute of limitations." INA argues that had PERS, prior to the settlement in *Glover,* diligently filed its own action against the third party therein, the third party would unquestionably have had notice of the claim against PERS at the time of the settlement, so as to remove the case from the realm of a "good-faith settlement and release."

However, *Glover* ultimately is not about what PERS did or did not do to perfect its claim. Rather, it is about whether one who enters into a settlement without notice of the existence of a disability or workers' compensation

---

[4]See footnote 2, *ante.*

claim and with a good faith belief that he is purchasing a full release of all claims may thereafter be held accountable by the injured party's employer for further damages. "In the absence of such notice [to the third party] prior to settlement, however, the employer in seeking reimbursement must be confined to its remedy against its employee." (34 Cal.3d at p. 919.)

INA complains that *Glover* cannot stand for the proposition that a good faith settlement bars the employer from further action against the alleged tortfeasor. ". . . Otherwise, an employee injured in an accident could settle and release his claim the day he had the accident and the workers' compensation carrier or employer could never pursue its claim for subrogation against a third-party. This would confer an enormous benefit on a responsible third-party tortfeasor while precluding a party (i.e. an employer or a workers' compensation carrier) from proceeding with a statutorily conferred right. This just cannot be the law."

This argument ignores the fact that the third party alleged tortfeasor is *paying* for the "enormous benefit" he is obtaining, and at the same time presumes that the injured employee will freely bargain away his rights (and thus those of his employer) for a peppercorn.

The equities in the instant case are not as clear as were those in *Glover*. Here, INA has made a timely effort to pursue what it perceives to be its right to reimbursement from TLC. TLC, meanwhile, has admitted (in the stipulated facts) liability for the accident. These facts, however, do not change the basic truth that TLC has in good faith bargained for and obtained a release from all liability for the accident. Since any right INA might have to seek reimbursement from TLC arises from principles of equitable subrogation (see *County of San Diego* v. *Sanfax Corp.*, *supra*, 19 Cal.3d 862, 876, fn. 7), we must conclude, as did the trial court, that INA's rights against TLC were extinguished by the settlement and release.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Martin, Acting P. J., and Thaxter, J., concurred.