**QWEST COMMUNICATIONS CORP.,**
a Delaware corporation,
Plaintiff,

v.

Jonathan WEISZ, an individual, Robert Weisz, an individual, and Does 1 through 10, Inclusive, Defendants.

No. CIV. 03CV0465B(LAB).

United States District Court,
S.D. California.

Aug. 6, 2003.

Michael R. Heimbold, Alschuler, Grossman, Stein and Kahan, Santa Monica, CA, for plaintiff.

James Richard Ballard, Schwartz, Semerdjian, Haile, Ballard and Cauley, for defendant.

## ORDER DENYING DEFENDANT JONATHAN WEISZ'S MOTION TO DISMISS

BREWSTER, Senior District Judge.

### I. Statement of the Case

This is a motion by Defendant Jonathan Weisz for dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). A hearing on the motion took place on Monday, July 21, 2003. Michael R. Heimbold, Esq., represented the Plaintiff, and James R. Ballard, Esq., appeared for Defendant Jonathan Weisz. For the reasons enumerated below, the Court denies the Defendant's motion in its entirety.

### II. Factual Background

Defendant Jonathan Weisz, a citizen of California, was the president and majority shareholder of Defendant New Media Telecommunications, Inc. ("New Media"). Between October, 1998 and October, 1999, New Media purchased more than $4 million in telecommunications services from Plaintiff Qwest Communications Corp. ("Qwest"), a Delaware corporation. New Media defaulted on its payment obligation and Qwest sued in the Circuit Court of Virginia. On October 28, 1999, Qwest obtained a judgment against New Media for $4,328.238.00.

In November, 1999, New Media ceased doing business and filed an assignment for the benefit of creditors pursuant to California state law. Qwest alleges that it never received notice of this assignment. In March, 2000, Qwest entered the Virginia judgment against New Media in San Diego Superior Court. Qwest recorded the judgment with the California Secretary of State in April, 2000, thereby creating a personal property judgment lien against New Media's assets.

In Spring 2000, shortly after learning of New Media's assignment of assets, Qwest requested payment of its judgment from the trustee. The trustee informed Qwest that the entirety of New Media's assets consisted of two computers. Thereafter, Qwest hired a computer expert to examine the computers' hard drives in an effort to recover New Media's accounting records. Qwest's expert allegedly discovered that the drives were intentionally "wiped" by overwriting all existing information with substitute characters.

Qwest managed to recover a portion of New Media's accounts payable ledger. The ledger allegedly indicates that in the months preceding its shutdown, New Media transferred over $1 million to Defendant Robert Weisz, Jonathan Weisz's father. Qwest contends that Jonanthan and Robert Weisz conspired to transfer New Media's funds to Robert Weisz in an attempt to defraud Qwest.

The Complaint prays for the Court to: (1) set aside the allegedly fraudulent conveyances; (2) enjoin Jonathan and Robert Weisz, and/or their agents, from transferring or otherwise disposing of the funds; (3) require Jonathan and Robert Weisz to account to Qwest for all profits and proceeds earned or taken in exchange for the funds; and (4) impose a constructive trust over the funds in favor of Qwest.

Defendant Jonathan Weisz now moves the Court to dismiss him from the Complaint on the ground that he is not a proper party to this action. Jonathan Weisz contends that: (1) the Uniform Fraudulent Transfer Act (codified at Cal. Civ.Code §§ 3439.01–3439.12) ("UFTA") does not permit Qwest to recover against him directly because he was neither the debtor nor the transferee of the funds at issue; and (2) Qwest cannot state a claim against him for conspiracy to violate the UFTA.

## III. Standards of Law

### A. Motion to Dismiss—FRCP 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the Complaint. The court must accept as true all material allegations in the Complaint, as well as reasonable inferences to be drawn from them, and must construe the Complaint in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

### B. The UFTA (Cal.Civ.Code. § 3439)

The UFTA states, in pertinent part, that:

**A transfer or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation ... (a) with actual intent to hinder, delay, or defraud any creditor of the debtor.**

Cal. Civ.Code § 3439.04 ("Section 3439.04"). The remedies available to a wronged creditor include: (1) avoidance of the transfer; (2) an attachment against the asset transferred; (3) an injunction against further disposition of the asset by the debtor or the transferee; (4) appointment of a receiver to take charge of the assets; (6) a levy of execution against the asset; and (7) any other relief the circumstances may require. *See* Cal. Civ.Code § 3439.07(a)-(c) ("Section 3439.07").

A transfer is not voidable against a person who took in good faith. *See* Cal. Civ. Code § 3439.08(a). To the extent that a transfer is voidable, the creditor may recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. *See* Cal. Civ.Code § 3439.08(b)("Section 3439.08"). The judgment may be entered against: (1) the first transferee of the asset; (2) a subsequent transferee who did not take for value in good faith; or (3) the person *for whose benefit* the transfer was made. *See id.*

## C. Civil Conspiracy

 Conspiracy is not a cause of action. Rather, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510–511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (Cal.1994). Through participation in the conspiracy, each coconspirator "effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. Standing alone, "a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of the actual tort." *Id.*

 Because conspiracy is not an independent tort, "it allows tort recovery only against a party who already owes a duty and is not immune from liability based on applicable substantive tort law principles." *Id.*

## IV. Discussion

### A. Whether the Complaint States a Cause of Action Against Jonathan Weisz for Fraudulent Conveyance in Violation of the UFTA

 The Complaint alleges that Jonathan Weisz transferred the funds at issue from New Media (the debtor) to Robert Weisz (the transferee). *See* Compl., ¶ 21. In the instant motion, Plaintiff Jonathan Weisz contends that because the Complaint does not allege that he was either the debtor or a transferee, he is not susceptible to judgment under the UFTA. The Court disagrees.

Section 3439.08(b)(1) states, *inter alia,* that in cases where the transfer is voidable, judgment may be had against the transferees of the asset and "the person for whose benefit the transfer was made." In his memorandum in support of the motion, Weisz quotes this passage and jumps to the conclusion that "[p]lainly, the Act only permits a defrauded creditor to recover from the judgment debtor or a transferee of the property in question." Def.'s Mem. in Supp., p. 5, l. 5–10. Not so. The plain language of Section 3439.08(b)(1) clearly does not limit recovery to debtors and transferees.

Again, the statute states that judgment may be had against transferees or "the person *for whose benefit* the transfer was made." Cal. Civ.Code § 3439.08(b)(1)(emphasis added). The two terms, "debtor" and "person for whose benefit the transfer was made," are not one and the same.[1] The latter term has broader application. In most cases, the only likely beneficiaries of a fraudulent transfer are the debtor who avoids his creditors and the transferee who receives the assets. That is not so in all cases, however, especially where, as here, the debtor is a corporation. It is a matter of common sense that the majority shareholder of a corporation (Jonathan Weisz) would stand to benefit if the assets of his failing business were fraudulently transferred to his father (Robert Weisz).

---

1. Moreover, there is no doubt that when the legislature meant to say "debtor," it simply said "debtor." The term appears in the text of the UFTA at least a dozen times. *See, e.g.,* Cal. Civ Code §§ 3439.01(e), 3439.02, 3439.04, 3439.05, 3439.06, 3439.07, 3439.08. This confirms that the phrase "person for whose benefit the transfer was made" must encompass more than debtors. *See, e.g., Boise Cascade Corp. v. U.S. E.P.A.,* 942 F.2d 1427, 1432 (9th Cir.1991)("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous."); *Delaney v. Superior Court,* 50 Cal.3d 785, 268 Cal.Rptr. 753, 760, 789 P.2d 934 (1990)("Significance should be given, if possible, to every word of an act.").

Defendant Weisz claims that *In re Lucas Dallas, Inc.*, 185 B.R. 801 (9th Cir. BAP 1995) supports his contention that judgment under the UFTA is limited to debtors and transferees. Untrue. In *Lucas Dallas*, the court determined that "the principal of a corporate debtor does not become a 'transferee' [under Section 550(a) of the Bankruptcy Code] by the mere act of causing the debtor to make a fraudulent transfer." *Id.* at 809.[2] However, the court also noted that liability is not limited merely to transferees. "Section 550(a) [holds liable] not only the initial transferee, but also 'the entity for whose benefit the transfer was made.'" *Id.* (quoting 11 U.S.C. § 550(a)(1)). Moreover, the *Lucas Dallas* court recognized that "the party who forces a debtor to make a transfer is almost always 'the entity for whose benefit such transfer was made,' and thus is generally always subject to [liability]." *Id.* Thus, the *Lucas Dallas* opinion is in perfect harmony with this Court's interpretation of Section 3439.08(b)(1) of the UFTA.

Taking all of the allegations in the Complaint as true, the Court holds that the Plaintiff has stated a claim against Jonathan Weisz for fraudulent conveyance in violation of the UFTA. Therefore, the motion to dismiss is DENIED.

### B. Whether the Plaintiff may Employ a Conspiracy Theory to Hold Jonathan Weisz Liable for Fraudulent Transfer

■■■ Defendant Jonathan Weisz argues that because he is neither a transferee nor a debtor, a conspiracy theory of liability cannot be employed to obtain a judgment against him for violation of the UFTA. Weisz relies on *Forum Insurance Co. v. Devere Ltd.*, 151 F.Supp.2d 1145 (C.D.Cal.2001), wherein the district court held that a plaintiff may not use a conspiracy theory to extend liability under the UFTA beyond transferees. The district court's conclusion appears to have been based on the assumption that the "UFTA provides only equitable remedies solely against transferees." *Id.* at 1150. This Court has already explained why it believes that statement is incorrect. *See supra* Part IV(A)(concluding that judgment under the UFTA is not limited to debtors and transferees). *See also Gutierrez v. Givens*, 1 F.Supp.2d 1077, 1087 (1998)(declining to dismiss UFTA claim against a non-transferee bank and noting that the "UFTA includes a broad remedial provision, § 3439.07(a)(3)(C), which permits a court, 'subject to applicable principles of equity,' to award '[a]ny other relief the circumstances may require.'"). Furthermore, even if this Court's interpretation of the UFTA is incorrect and direct application of the statute is limited solely to debtors and transferees, it does not follow that a non-transferee cannot engage in a conspiracy to violate the UFTA. Although conspiracy is a theory of liability rather than an independent tort, the chief function of the theory is to extend liability beyond the principals who actually committed the tort. The sole caveat is that the coconspirator must be *"legally capable* of committing the tort, *i.e.*, that he or she owes a duty to plaintiff recognized by law and is *potentially* subject to liability for breach of that duty." *Applied Equip. Corp.*, 7 Cal.4th at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (emphasis added).[3] No

---

**2.** The legislative history is clear on the point that Section 3439.08(b) of the UFTA "is derived from Section 550(a) of the Bankruptcy Code." *Lucas Dallas*, 185 B.R. at 810 (quoting Cal. Civ.Code § 3439.08, legislative committee comment—assembly, 1986 addition, ¶ 2

(West.Supp.1995)). Therefore, "cases construing the Bankruptcy Code counterparts [of the UFTA] are persuasive authority due to the similarity of the laws in this area." *Id.*

**3.** The cases the Defendant relies upon, *see* Def's Mem. in Supp., p. 8, l. 2–14, in which

doubt, Jonathan Weisz was legally capable of committing a fraudulent conveyence in violation of the UFTA. As president of the debtor corporation, New Media, Weisz had a duty not to commit a fraud upon the creditor, Qwest.[4] If he had transferred the subject funds to his own bank account (thereby becoming the transferee), there is no doubt that he would be a proper defendant in this action. If, as alleged, he conspired to transfer the funds to his father's control, then he can be held to account on a conspiracy theory. *See Taylor v. S & M Lamp Co.*, 190 Cal.App.2d 700, 706, 12 Cal.Rptr. 323 (1961)("[A] debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable for damages.").

## V. Conclusion

For all of the aforementioned reasons, the Court DENIES the motion to dismiss in its entirety.

IT IS SO ORDERED.

courts found that the defendant coconspirators could not be held liable under a conspiracy theory, involve situations where it was legally impossible for the coconspirators to commit the underlying civil wrong. For example, in *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 260 Cal.Rptr. 183, 775 P.2d 508 (Cal.1989), the California Supreme Court held that a principal's agents could not be held liable for conspiracy to breach the principal's implied obligation of good faith and fair dealing because only the principal owed the plaintiff a duty of good faith. Similarly, in *Chavers v. Gatke Corp.*, 107 Cal.App.4th 606, 132 Cal. Rptr.2d 198 (Cal.Ct.App.2003), the appellate court held that the plaintiff could not employ a conspiracy theory to hold the defendant automobile part manufacturers liable for negligence and strict liability because the plaintiff failed to establish that the manufacturers owed him a legal duty of care.

4. Indeed, *everyone* owes a duty not to commit an intentional tort against *anyone*.