Filed 2/14/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARIO RENDA, | D063075 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2007-00075627-CU-NP-CTL) |
| ANA LUISA NEVAREZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge. Affirmed.

John J. Freni for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Mario Renda appeals the judgment he obtained against Ana Luisa Nevarez setting aside certain fraudulent transfers she made after he obtained a money judgment against her in a prior action. Renda contends he is entitled to a personal judgment against Nevarez for the amount of the transfers. We disagree and affirm the judgment.

BACKGROUND

Renda obtained a judgment for $817,429.55 against Nevarez in a prior action for fraud, breach of contract, and negligence. Nevarez did not pay the judgment, and Renda learned she was transferring assets to various sham entities. He therefore filed the instant action against Nevarez, the sham entities, and other defendants. Renda asserted a single cause of action under the Uniform Fraudulent Transfer Act (UFTA; Civ. Code, §§ 3439-3439.12),[1] in which he alleged Nevarez made the transfers to hinder, delay, and defraud him in collecting on the judgment he obtained against her in the prior action. Renda also alleged the other defendants aided and abetted or conspired with Nevarez to hinder, delay, or defraud him by accepting or facilitating the fraudulent transfers. Renda sought judgment voiding the transfers and also awarding him damages, attorney fees, costs, and interest.

Most of the defendants defaulted, and the case proceeded to a jury trial against Nevarez and three business entities alleged to have aided and abetted or conspired with her in making the fraudulent transfers. The jury returned a special verdict finding Nevarez fraudulently transferred monies to two of the defaulting defendants with the intent to hinder, delay, or defraud Renda; the transfers harmed him; and his "damages" were $450,000. The jury also found against Renda on his aiding and abetting and conspiracy theories.

---

[1] Subsequent undesignated section references are to the Civil Code.

2

After the jury returned its verdict, Renda submitted a proposed judgment that would have held Nevarez and the defaulting defendants jointly and severally liable for $450,000. Nevarez objected on the grounds, among others, that the UFTA does not authorize a court to enter a judgment against the debtor for damages in the amount of the fraudulent transfer, and such a judgment would amount to an impermissible double recovery to the creditor. The trial court agreed with Nevarez and denied Renda's request for entry of a money judgment against her. The court subsequently entered a judgment voiding the $450,000 in fraudulent transfers and holding the defaulting defendants jointly and severally liable for that amount.

## DISCUSSION

Renda argues he is entitled to a personal judgment against Nevarez for $450,000 because the UFTA expressly authorizes entry of a money judgment against "the person for whose benefit the transfer was made" (§ 3439.08, subd. (b)(1)), and the jury's verdict that Nevarez transferred $450,000 with the actual intent to hinder, delay, or defraud him makes her such a person. We disagree. Under the circumstances of this case, Renda is not entitled to recover a money judgment against Nevarez under the UFTA.

The UFTA "declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims," and its purpose "is primarily to protect unsecured creditors against transfers and obligations injurious to their rights." (Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.01, pp. 272, 273; accord, *Mejia v. Reed* (2003) 31 Cal.4th 657, 664 (*Mejia*).) The UFTA is remedial legislation (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 937) designed to protect creditors

3

by authorizing them to set aside transfers of property by which debtors try to avoid paying debts by putting assets beyond creditors' reach (*Mejia*, at pp. 663, 668; *Fross v. Wotton* (1935) 3 Cal.2d 384, 390; *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1873).  When a debtor transfers property "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" (§ 3439.04, subd. (a)(1)), the creditor may obtain "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim" (§ 3439.07, subd. (a)(1); see *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 123-124 [UFTA authorizes court to set aside transfer made with actual fraudulent intent]; see also *GATX Corp. v. Addington* (E.D.Ky. 2012) 879 F.Supp.2d 633, 642 ["the primary remedy is to void the fraudulent conveyance"]).  To the extent the transfer is voidable, the creditor "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less," and the judgment may be entered against "[t]he first transferee of the asset or the person for whose benefit the transfer was made."  (§ 3439.08, subd. (b)(1).)

Here, as authorized by section 3439.07, subdivision (a)(1), the trial court set aside the $450,000 in transfers Nevarez made with the intent to impede Renda's collection on the judgment he obtained against Nevarez in the prior action.  As authorized by section 3439.08, subdivision (b)(1), the court also entered a judgment for $450,000 against the defaulting defendants as transferees.  The court, however, refused to enter a money judgment against Nevarez as "the person for whose benefit the transfer was made."  (*Ibid.*)  In so refusing, Renda argues, the court erred.

4

Whether a debtor who makes a fraudulent transfer is "the person for whose benefit the transfer was made," against whom a creditor may obtain a money judgment under section 3439.08, subdivision (b)(1), appears to be an issue of first impression in California.  Renda has cited no case holding such a debtor is subject to a money judgment under the UFTA, and we have found none.[2]  There are cases supporting the opposite conclusion, however.  A federal appellate court construing the provision of the Bankruptcy Code from which the UFTA provision derives[3] held "there is no cause of

---

[2]     Renda cites *Qwest Communications Corp. v. Weisz* (S.D.Cal. 2003) 278 F.Supp.2d 1188 (*Qwest*) as support for including a debtor who makes a fraudulent transfer within the phrase "the person for whose benefit the transfer was made" (§ 3439.08, subd. (b)(1)). *Qwest* states "the only likely beneficiaries of a fraudulent transfer are the debtor who avoids his creditors and the transferee who receives the assets," and "the phrase 'person for whose benefit the transfer was made' must encompass more than debtors." (*Id.* at p. 1191 & fn. 1.)  But those statements were unnecessary to the decision, because the issue before the court was whether a creditor could obtain a judgment under the UFTA against the majority shareholder of a debtor corporation that had fraudulently transferred corporate assets to the shareholder's father. (*Id.* at p. 1191.)  The creditor did not seek a judgment against the debtor corporation. (*Id.* at p. 1190.)  Any suggestion in *Qwest* that a debtor is subject to a money judgment under section 3439.08, subdivision (b)(1) is therefore nonbinding dictum. (See, e.g., *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272.)  Similar dicta occur in appellate decisions applying the Texas version of the UFTA. (See *Citizens Nat. Bank of Texas v. NXS Const., Inc.* (Tex.Ct.App. 2012) 387 S.W.3d 74, 84 ["person for whose benefit the transfer was made may include the actual debtor or someone attempting to avoid a debt"]; *Trigeant Holdings, Ltd. v. Jones* (Tex.Ct.App. 2005) 183 S.W.3d 717, 726 ["UFTA not only creates liability against 'the person for whose benefit the transfer was made,' such as the debtor, but also against 'the first transferee of the asset,' or any 'subsequent transferee' "].)

[3]     Section 3439.08, subdivision (b) "is derived from Section 550(a) of the Bankruptcy Code." (Legis. Com. com., 12A West's Ann. Civ. Code, *supra*, foll. § 3439.08, p. 359.)  Under the Bankruptcy Code, to the extent a transfer is avoided the bankruptcy trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from— [¶]  (1)  the initial transferee of

5

action . . . for the value of an avoidable transfer against the transferring debtor as an 'entity for whose benefit such transfer was made.' " (*In re Coggin* (11th Cir. 1994) 30 F.3d 1443, 1454.) In addition, the Court of Appeal, applying common law principles and remedies later codified by the UFTA, held a money judgment against the transferee was permissible, but a money judgment against the debtor was "not sustained by reason or authority." (*Wright v. Salzberger* (1932) 121 Cal.App. 639, 646.) Although these cases suggest the UFTA does not authorize entry of a money judgment against a debtor *under any circumstances*, we need not (and do not) decide that broad issue to resolve this appeal. Instead, for reasons we explain below, we conclude that even if we assume a creditor may recover a money judgment against a debtor under the UFTA under some circumstances, the trial court properly denied that remedy in this case, because the money judgment Renda sought under the UFTA would partially duplicate the money judgment he had already obtained against Nevarez in the prior action, in violation of the rule prohibiting double recovery for the same harm.

A creditor who successfully attacks a transfer under the UFTA is not automatically entitled to a money judgment against the person for whose benefit the transfer was made. The statute provides that to the extent a transfer is voidable, "the creditor *may* recover judgment" for the lesser of the value of the asset or the amount needed to satisfy the creditor's claim, and the "judgment *may* be entered" against the person for whose benefit the transfer was made. (§ 3439.08, subd. (b)(1), italics added.) Ordinarily, when a

such transfer *or the entity for whose benefit such transfer was made*." (11 U.S.C. § 550(a), italics added.)

6

statute provides a court "may" do something, the statute is permissive, not mandatory, and grants the court a discretionary authority. (E.g., *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542; *Neville v. County of Sonoma* (2012) 206 Cal.App.4th 61, 75; *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1197.) In exercising discretion to provide relief from fraudulent transfers, courts are directed by the UFTA to consider "the principles of law and equity," which "supplement its provisions." (§ 3439.10; see § 3439.07, subd. (a)(3)(C) ["[s]ubject to applicable principles of equity," a court may grant "[a]ny other relief the circumstances may require"]; *Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 840 (*Filip*) [holding court has "discretion in fashioning relief" under UFTA].) Hence, a court may refuse to enter a money judgment against a person for whose benefit a fraudulent transfer was made if an applicable legal or equitable principle bars entry of such a judgment.

The trial court properly exercised such discretion in denying Renda a money judgment against Nevarez for the $450,000 in fraudulent transfers. A well-established principle, applied both at law and in equity, is that a plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited. (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158-1159 (*Tavaglione*).)[4] Here, the harm Renda suffered consisted of the damages caused by the

_____

4  California courts have applied this principle in many different contexts. (See, e.g., *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 905 [" 'plaintiff . . . may not be awarded both [specific performance and damages for breach of contract] to the extent such an award would constitute a double recovery' "]; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1158 ["equitable principles preclude double recovery for

7

fraud, breach of contract, and negligence that underlay his prior action against Nevarez; and for that harm, he recovered a judgment against her for $817,429.55. Renda's present UFTA action is an effort to collect on the prior judgment by recovering monies Nevarez transferred to other defendants to avoid paying that judgment. (See *Mejia*, *supra*, 31 Cal.4th at p. 663 ["UFTA permits defrauded creditors to reach property in the hands of a transferee"].) The UFTA does not impose on the debtor any liability additional to or distinct from the existing claim of the creditor; it simply allows the creditor to obtain "[a]voidance of the transfer . . . *to the extent necessary to satisfy the creditor's claim*." (§ 3439.07, subd. (a)(1), italics added.) A "defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud." (*Marine Midland Bank v. Murkoff* (N.Y.App.Div. 1986) 120 A.D.2d 122, 133 [508 N.Y.S.2d 17, 24]; see *Putnam Sand & Gravel Co. v. Albers* (1971) 14 Cal.App.3d 722, 726 ["parties were . . . restored to their original postures" by setting aside fraudulent transfer].) As the trial court pointed out, however, granting Renda an additional judgment against Nevarez under the UFTA for $450,000, "the amount transferred here to avoid paying part of his underlying judgment, *would in effect allow* [*him*] *to recover more than the underlying judgment*,

employees" under antidiscrimination statutes]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [recovery for false promise "may be limited by the rule against double recovery of tort and contract compensatory damages"]; *Board of Administration v. Glover* (1983) 34 Cal.3d 906, 915 [under equitable subrogation, " 'neither double recovery of the same item of loss nor double liability for the same item of injury is permitted' "]; *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 754 ["single satisfaction rule is equitable in nature, and its apparent purpose is to prevent unjust enrichment"]; *Dodds v. Bucknum* (1963) 214 Cal.App.2d 206, 212 [injured plaintiff not entitled to damages for medical expenses already paid by defendant's insurer because " 'no one can recover compensation twice in respect of the same injury' "].)

8

which the [UFTA] does not allow." (Italics added.) We thus conclude that because Renda obtained a judgment in the prior action for the damages Nevarez caused him, the principle against double recovery for the same harm bars him from obtaining a second judgment against her under the UFTA for a portion of those same damages.

Consistent with our conclusion is the decision of the Colorado Supreme Court in *Miller v. Kaiser* (1967) 164 Colo. 206 [433 P.2d 772] (*Miller*). In *Miller*, a creditor obtained a judgment against a debtor in a prior action and then filed two actions to set aside postjudgment transfers of property the debtor made to his wife. The trial court declared the transfers void, ordered the transferred properties sold, and also awarded damages against the debtor and his wife. In reversing the damages award against the debtor, the Colorado Supreme Court explained:

> "The primary remedy in an action for fraudulent conveyance is a declaration that the fraudulent conveyance is void as to the judgment creditor. In other words, the remedy sought is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor. In Colorado, this equitable remedy is defined [by statute]. As is true of such statutes in most states, our statutory provision does little more, if anything, than to restate the common law. *The exigencies of any particular case may vary the form of the relief but it always must be limited to the substance of the remedy itself which is to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance.* [¶] . . . [¶]
>
> "In both cases before us, the equitable remedy was ordered by the trial court in aid of the collection of the judgment debt against the fraudulent transferor. *Implicit in this remedy is a bar to any money judgment against the fraudulent transferor.* This general rule is well expressed in [*Wright v. Salzberger, supra,*] 121 Cal.App. 639, 9 P.2d 860. [Citation.]
>
> "It becomes axiomatic therefore after analyzing this equitable remedy that *a judgment creditor cannot in a fraudulent conveyance action be the*

9

*recipient, as against the fraudulent transferor, of a money judgment, for the very basis of this action is the judgment debt he is endeavoring to collect.* A different situation might be presented in an action in which special damages were alleged and proved. *To award the judgment creditor a money judgment would amount to an increase in the judgment debt owed to the judgment creditor by the fraudulent transferor*." (*Miller*, *supra*, 433 P.2d at p. 775, italics added.)

The Colorado Supreme Court therefore ordered the judgments "modified to delete all awards of money damages against . . . the fraudulent transferor and judgment debtor." (*Ibid.*) Since *Miller* discussed remedies against fraudulent transfers similar to those available under the UFTA and relied in part on a California decision, we deem *Miller* persuasive. (See § 3439.11 [UFTA should be construed to make law uniform]; *Mejia*, *supra*, 31 Cal.4th at p. 664 [citing "decisions of other states construing parallel provisions of the UFTA"]; *Kirkland v. Risso* (1979) 98 Cal.App.3d 971, 977-978 [following decisions of other states in fraudulent transfer case].)

In sum, we hold a creditor who has obtained a judgment for damages against a debtor in a prior action is not entitled under the UFTA to recover a personal judgment against the debtor for the amount of money the debtor subsequently transfers to third parties to hinder, delay, or defraud the creditor in collecting on the original judgment. Therefore, the trial court correctly denied Renda's request for entry of a money judgment against Nevarez under the UFTA.

Renda urges us to reach the opposite conclusion on several grounds. As we discuss below, none is persuasive.

Renda first contends the "usual and ordinary meaning of the phrase ['the person for whose benefit the transfer was made' (§ 3439.08, subd. (b)(1))] shows that it includes the

10

debtor." In support, he relies on *Qwest*, *supra*, 278 F.Supp.2d 1188, which we have already explained does not support the contention. (See fn. 2, *ante*.) Moreover, even if a debtor who makes a fraudulent transfer qualifies as "the person for whose benefit the transfer was made," that alone does not entitle a creditor to recover a money judgment against the debtor. As we explained above, a court has discretion under the UFTA to refuse to enter a money judgment, and properly does so where, as here, a background principle of law and equity bars entry of such a judgment.

Next, Renda argues a fraudulent transfer is a tort for which the UFTA provides a distinct cause of action and entitles a creditor to recover a money judgment against a debtor for the amount of the fraudulent transfers. He bases this argument on *Filip*, *supra*, 129 Cal.App.4th 825, and *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700 (*Taylor*). Neither case is on point.

In *Filip*, *supra*, 129 Cal.App.4th 825, the court stated "fraudulently transferring property" constitutes "tortious conduct" sufficient to support liability on a conspiracy theory. (*Id.* at p. 837.) The statement was dictum, however, because the court held, "Whether defendants conspired to do so has no effect on the judgment: the transfers were fraudulent and plaintiff was entitled to relief." (*Id.* at p. 838.) Moreover, the particular relief to which the court held the plaintiff was entitled was a judgment setting aside the transfers and authorizing sale of the transferred properties to satisfy the plaintiff's underlying judgment against the debtor who made the fraudulent transfers. (*Id.* at pp. 832, 839-840.) The *Filip* court did not hold the plaintiff was entitled to a money judgment against the debtor for tort damages under the UFTA.

11

In *Taylor*, *supra*, 190 Cal.App.2d 700, the plaintiff, a judgment creditor, alleged the defendant conspired with judgment debtors to conceal assets for the purpose of preventing the plaintiff from recovering on his judgment. (*Id.* at p. 705.) The court held the allegations stated a tort claim for damages against the defendant. (*Id.* at p. 706.) But in *Taylor*, there was no allegation of a fraudulent transfer of assets, and the plaintiff asserted no claim against the judgment debtors, who were not even parties to the case. The *Taylor* court thus had no occasion to consider whether a creditor may obtain a money judgment against a debtor for the amount of fraudulent transfers the debtor made to impede the creditor's collection of a prior judgment against the debtor. " ' "It is axiomatic that cases are not authority for propositions not considered." ' " (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.)

Finally, Renda complains that "[e]xempting" debtors who make fraudulent transfers from entry of a money judgment under the UFTA "would have the perverse effect of incentivi[z]ing debtors to commit fraudulent transfers." This is a policy argument the UFTA should be amended to provide additional, monetary remedies against debtors. "Our duty as a court," however, "is to apply the governing statutes as written to the facts of the case before us, not to rewrite the statutes to make them more just or fair in particular circumstances." (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1419.) As we have explained, the UFTA states that "principles of law and equity . . . supplement its provisions" (§ 3439.10); and the principle prohibiting double recovery bars entry of a money judgment against Nevarez in this case (*Tavaglione*, *supra*, 4 Cal.4th at pp. 1158-1159; see fn. 4, *ante*). If Renda

12

believes the result is unfair and additional remedies under the UFTA are needed to deter debtors from transferring assets to avoid paying prior judgments, he must address his concerns to the Legislature, not to this court.  (*Thornton*, at p. 1419.)

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.