Filed 5/21/25 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

In re the Marriage of A.M. and R.Y.

| | |
|---|---|
| A.M., | D084344 |
| Appellant, | |
| v. | (Super. Ct. No. 23FL004284C) |
| R.Y., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 30, 2025, be modified as follows:

On page 11, in the first full paragraph, the sentence beginning with "Even when a DVRO" and ending with "pending a noticed hearing" is modified to read as follows:

> Even when a DVRO petitioner has made a facially adequate showing of past abuse on the papers, the trial court still has discretion to conclude that the circumstances do not warrant ex parte relief pending a noticed hearing.

The sentence commencing at the bottom of page 11 beginning with "Because the trial court itself" and ending at the top of page 12 with "the truth of A.M.'s evidence" is modified to read as follows:

> We need not decide whether or when a trial court may deny a DVTRO on credibility grounds, because the record before us does not disclose that the court had any basis to doubt A.M.'s allegations in ruling on the papers at this initial stage of the proceedings. We must therefore assume the truth of A.M.'s evidence.

On page 12, footnote 4 is deleted, which will require renumbering of all subsequent footnotes.

The sentence commencing at the bottom of page 15 beginning with "It follows that whenever" and ending at the top of page 16 with "acts of domestic violence" is modified to read as follows:

> It follows that whenever a court declines to grant a DVTRO to a petitioner who has made a facially sufficient showing of abuse, its statement of reasons must reflect consideration of the fundamental purpose of the DVPA to prevent recurring acts of abuse.

On page 16, in the first full paragraph, the sentence beginning with "More specifically" and ending with "pending the noticed hearing" is modified to read as follows:

> More specifically, we hold that a trial court has discretion to deny a DVTRO to a petitioner who has made a prima facie showing of past abuse if it reasonably concludes based on the totality of circumstances that a DVTRO is not necessary to protect the petitioner or others for whom the petitioner is seeking protection from further acts of abuse pending the noticed hearing.

2

On page 16, in the first sentence of footnote 5, the word "domestic" is deleted. The sentence is modified to read as follows:

> The Judicial Council form used by the trial court has check boxes with preprinted reasons for denying a DVTRO, but the form does not include language for the court to find based on the totality of circumstances that a DVTRO is not necessary to protect the petitioner or others for whom the petitioner is seeking protection from further acts of abuse pending the noticed hearing.

At the top of page 17, the sentence beginning with "Although we recognize" and ending with "family law dispute" is modified to read as follows:

> The court may not deny ex parte relief at the DVTRO stage solely because otherwise sufficient allegations of abuse may have arisen in the context of a family law dispute.

On page 17, in the first full paragraph, the sentence beginning with "At the same time" and ending with "since its original ruling" is deleted.

On page 17, in the first full paragraph, the sentence beginning with "Accordingly, we will reverse" and ending with "since the original ruling" is modified to read as follows:

> Accordingly, we will reverse the order and remand the matter to the trial court for further consideration of the DVTRO based on the totality of circumstances.

On page 17, in the first full paragraph, the sentence beginning with "We express no view" and ending with "its discretion on remand" is modified to read as follows:

> We express no view on how the court should exercise its discretion on remand or whether it may consider events that have occurred since the original ruling.

3

There is no change in judgment.

The petition for rehearing is denied.

BUCHANAN, Acting P. J.

Copies to:  All parties

4

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| In re the Marriage of A.M. and R.Y. | D084344 |
| --- | --- |
| A.M., | |
| Appellant, | (Super. Ct. No. 23FL004284C) |
| v. | |
| R.Y., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Euketa Oliver, Judge. Reversed and remanded.

Cage & Miles and John T. Sylvester for Appellant.

Elissa Irene Gray and Jennafer Dorfman Wagner for Family Violence Appellate Project and Legal Aid Society of San Diego as Amici Curiae on behalf of Appellant.

Stegmeier, Gelbart, Schwartz & Benavente, Eric J. Sather; Bickford Blado & Botros, and Andrew J. Botros for Respondent.

A.M. appeals from an order denying a domestic violence temporary restraining order (DVTRO)[1] against her former husband R.Y. A.M. argues the trial court erred by denying her request because she made a facially adequate showing of abuse for a DVTRO pending a noticed hearing. We reverse the order denying the DVTRO and remand for further consideration of the issue.

FACTUAL AND PROCEDURAL BACKGROUND

The facts set forth below are based solely on the evidence submitted by A.M. in support of her request for a DVRO. R.Y. has not had an opportunity to contest any of these facts because the trial court denied the DVTRO and scheduled an evidentiary hearing the same day A.M.'s petition was filed—before R.Y. submitted an opposition. Although we must summarize the evidence as it was presented by A.M., we make no judgment regarding the truth of these facts.

A.M. and R.Y. were married in April 2019 and separated in April 2023. Their daughter was born in August 2019.

A.M. filed for divorce in April 2023. In December 2023, the parties signed a marital settlement agreement (MSA), which was incorporated into an uncontested judgment of dissolution filed in February 2024. The MSA

---

[1] The Domestic Violence Protection Act (DVPA) authorizes short-term ex parte restraining orders pending a hearing (Fam. Code, §§ 6320–6327) and long-term restraining orders issued after notice and hearing (Fam. Code, §§ 6340–6347). We refer to the former as a DVTRO and the latter by its common designation as a permanent DVRO (domestic violence restraining order). A "permanent" DVRO is actually limited to an initial duration of no more than five years, subject to renewal for five or more years or permanently. (Fam. Code, § 6345, subd. (a).) All further undesignated references are to the Family Code.

2

gave A.M. sole legal and "primary physical custody"[2] of their daughter, and it gave R.Y. weekend supervised visitation, with the days and duration of the weekend visits to be mutually agreed upon by the parties and confirmed at least two weeks in advance. R.Y.'s visits were to be supervised by A.M. or a third party of her choosing until their daughter was 13 years old.

The MSA confirmed the parties' separate property and divided their community property, with R.Y. agreeing to make an equalization payment to A.M. of $15 million. The MSA awarded to R.Y. as his sole and separate property a company called Filtrous Inc. (Filtrous) and another company, both of which were created during the marriage. R.Y. agreed that A.M. would remain an employee of these companies at a reasonable salary to facilitate her access to health insurance coverage for herself and their daughter.

The MSA provided for no payment of spousal or child support and stated that A.M. "will be able to provide for the child according to the standard of living established during the marriage."

In May 2024, three months after entry of the stipulated judgment, A.M. filed a request for DVRO against R.Y. on behalf of herself and their daughter, who was then four years old. She sought an order enjoining abuse, no-contact and stay-away orders for herself and their daughter, an order removing R.Y.'s access to a Tesla vehicle, an order for R.Y. to pay for the cost of A.M.'s therapy, an order awarding A.M. child support, and an order awarding sole

---

[2] "Though frequently employed, the term 'primary physical custody' has no legal meaning. [Citation.] It is not found in the Family Code. [Citation.] Under the Family Code, a parent may be awarded joint physical custody (Fam. Code, § 3004) or sole physical custody. (Fam. Code, § 3007 . . . )" (*In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 945, fn. 2.)

legal and physical custody of their daughter to A.M. with no visitation for R.Y.

A.M.'s DVRO petition was accompanied by a 23-page declaration describing R.Y.'s alleged abuse. She asserted that R.Y. had subjected her to psychological, verbal, and emotional abuse and coercive control. After their daughter was born in 2019, R.Y. belittled her post-partum emotions and made her feel bad about herself. He shamed and guilted her into having sex even though she had frequent urinary tract infections; he demanded that she lie down in bed in a "compromising position" in front of their daughter and "force[d] affection" on her; he touched her vagina underneath the sheets or stuck his hands in her pants when their daughter was present; and he berated, belittled, and criticized her.

In March 2023, R.Y. told A.M. she was depriving him of his sexual needs. He became angry and shouted at her. He made her feel so bad about not having sex that she felt forced to do so. She asked him to wear a condom, but he refused.

After the parties' April 2023 separation, R.Y. shouted at A.M. and berated her in front of their daughter, pressured her to give him a key to her residence, played "mind games" with their daughter, threatened to fight A.M. for custody to force her to split their assets evenly, continued to make her feel bad about her post-partum emotions, sent her multiple texts blaming and attacking her for the failure of the marriage, yelled at her about the division of assets and the custody arrangements in front of their daughter, pressured her into changing their financial agreement, and on several occasions was forcefully insistent on hugging A.M. or their daughter when they did not want to hug him.

After they signed the MSA, A.M. initially allowed R.Y. to stay at her residence for his supervised visits with their daughter. However, R.Y. yelled at A.M. in front of their daughter, which frightened them. A.M. would ask him to stop yelling, but he would not. R.Y. also exposed their daughter to his hostility about the custodial and financial settlement. On occasion, R.Y. would try to intimidate A.M. in front of their daughter by staring A.M. down. Their daughter would sense something was wrong and become uneasy. At the end of March 2024, A.M. told R.Y. he could no longer stay at her residence.

A.M.'s declaration described other alleged abuse occurring in March and April 2024, after the judgment of dissolution. R.Y. bombarded her with texts about the division of the business property and continued to blame and shame her about the failure of their marriage. On one occasion, when R.Y. was at A.M.'s residence for a visit with their daughter, he yelled at A.M. about the MSA and then attempted to grab her. When she resisted and told him to stop, he continued to grab her and tried to hug her. He then grabbed her "by force" in front of their daughter. In a subsequent text exchange about the incident, A.M. said to him, "I clearly said stop." He responded: "Sometimes you don't mean what you say. It's just a feminine thing. It's the weather. I'm just learning this."

Two days later, R.Y. yelled at A.M. and called her "greedy, entitled, and not grateful" because of what she had requested in the divorce. With their daughter nearby, R.Y. threated to "fight" A.M. on custody. A.M. tried to remove herself, but R.Y. grabbed her and forced a hug.

A few days after that, R.Y. tried to pressure A.M. to forego approximately $4 million he still owed her under the MSA. He berated her, called her greedy, and told her she would be "risking custody" if she refused.

In a text exchange, R.Y. threatened to start notifying people of their divorce. A.M. believed this "was a threat to ruin [her] reputation by making it difficult for [her] to work."

R.Y. stopped paying A.M.'s salary from Filtrous, in violation of the MSA. He told her by text: "Thank you, but your assistance will no longer be needed. . . . We may have to take a look at the entire MSA and redo it, and revisit Lawyers."

R.Y. also refused to provide two weeks advance notice before his visits with their daughter, as required by the MSA. On one occasion in April 2024, R.Y. gave only two days notice for a visit, but their daughter was sick so A.M. wanted to let her rest. R.Y. showed up unannounced at A.M.'s residence, then called and barraged her with text messages when she would not answer the door. He refused to leave until A.M. let him say goodnight to their daughter. Later the same month, R.Y. again showed up unannounced at A.M.'s residence one day before a scheduled visit.

In addition to her own declaration, A.M. lodged 22 exhibits with hundreds of e-mails and text messages between her and R.Y. from January through April 2024. These messages included numerous arguments between R.Y. and A.M. about their marriage and divorce, the amount of money A.M. was receiving under the MSA, custody and visitation with their daughter, and some of the incidents described in A.M.'s declaration. In his texts, R.Y. complained about the terms of the MSA, accused A.M. of sneaking provisions into it that he did not agree to, and stated that the MSA was "egregiously in [her] favor" and "extremely unreasonable." R.Y. told A.M.: "You're still hurting me. Before it was no sex and I got over that. Now it's more like no [daughter] and imma take all your money."

In one of A.M.'s texts in March 2024, she told R.Y.: "You're right you wouldn't physically hurt me. However, I am afraid of you emotionally and psychologically. . . . Is there a way to consider and understand why I am afraid and have a need to protect myself?" She also said: "I see you have good intentions with your hugs."

On May 17, 2024, the same day A.M.'s DVRO petition was filed, the trial court set a hearing for June 6, 2024. On the Judicial Council DV-109 "Notice of Court Hearing" form, the court checked a box denying a temporary restraining order pending the hearing and checked preprinted boxes giving the following reasons for the denial: (1) the facts given in the request "do not show reasonable proof of a past act or acts of abuse"; and (2) the facts given in the request "do not give enough detail about the most recent incidents of abuse, including what happened, the dates, who did what to whom, or any injuries or history of abuse." In addition, the court checked the "Other reasons for denial" box and handwrote the following: "Issues described center around finalizing the dissolution and child custody/visitation."

A.M. filed a notice of appeal from the May 17, 2024 order denying a DVTRO, and she also requested a stay of further proceedings in the trial court pending the outcome of the appeal and the entry of a DVTRO pending appeal.[3] At the hearing on June 6, 2024, the court noted that "today would have been the date set for the hearing where [A.M.] could have put on evidence to support her position for the request for the restraining order . . . and if the court found that [A.M.] had met her burden, the court could have granted the permanent restraining order." A.M.'s counsel

_____

[3] A.M. also filed a petition for writ of mandate, certiorari, prohibition, or other appropriate relief challenging the denial of the DVTRO, including a request for immediate stay with directions to the trial court to enter a DVTRO. We summarily denied the petition.

confirmed that she was still requesting an evidentiary hearing if the matter was not stayed. The court ultimately agreed to stay further proceedings on the DVRO petition but refused to grant a DVTRO pending the outcome of the appeal. It also agreed to set the permanent DVRO request for an evidentiary hearing in August 2024. According to the parties, the court has now continued the evidentiary hearing on the permanent DVRO to August 2025. A.M. has not separately appealed from the order of June 6, 2024 denying a DVTRO pending this appeal.

## DISCUSSION

### I

As an initial matter, R.Y. argues that the order denying the DVTRO is not appealable, and even if it is, the appeal is moot because the DVTRO would have expired after 25 days. We are not persuaded.

An order denying a permanent DVRO is appealable as an order refusing to grant an injunction. (Code Civ. Proc., § 904.1, subd. (a)(6) [order granting or refusing to grant injunction is appealable]; see *Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 974 ["an order granting or denying a request for DVRO" is appealable].) "A domestic violence restraining order is a type of injunction, as it is 'an order requiring a person to refrain from a particular act.' " (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1503–1504.) The same is true of a DVTRO. "All orders granting or refusing either a temporary restraining order or a preliminary injunction are directly appealable." (*Courtesy Temp. Serv., Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1286.) Thus, the order denying A.M.'s request for a DVTRO is appealable.

Nor is the appeal moot. An appeal will be deemed moot if the occurrence of events renders it impossible for the appellate court to grant any effective relief. (*Lockaway Storage v. County of Alameda* (2013) 216

8

Cal.App.4th 161, 175.)  Here, the noticed hearing on a permanent DVRO has not yet been conducted and has been continued until August 2025.  Thus, we could still grant effective relief by, for example, reversing the trial court's order and directing it to issue a DVTRO pending a noticed hearing on the permanent DVRO.  Although such an order would initially be limited to 21 or 25 days, it could be extended if the hearing was not conducted within this time frame.  (§§ 242, subd. (b), 245, subd. (c), 6327.)  Accordingly, we decline to dismiss the appeal on appealability or mootness grounds.

## II

We now turn to the merits of A.M.'s argument that the trial court erred by denying her request for a DVTRO pending a noticed hearing on a permanent DVRO.

A. *General Background of DVPA*

The purpose of the DVPA is to prevent the recurrence of acts of domestic violence and provide for a separation of the persons involved for a period sufficient to resolve the underlying causes.  (Fam. Code, § 6220.)  The DVPA defines domestic violence as "abuse" perpetrated against enumerated individuals, including a former spouse or child.  (Fam. Code, § 6211.)  It further defines "abuse" to mean any of the following: (1) intentionally or recklessly causing or attempting to cause bodily injury; (2) sexual assault; (3) placing a person in reasonable apprehension of imminent serious bodily injury to that person or another; or (4) engaging in any behavior that has been or could be enjoined under Family Code section 6320.  (Fam. Code, § 6203.)  The behavior that may be enjoined under Family Code section 6320 includes molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, making annoying telephone calls (Pen. Code, § 653m), and disturbing the peace of the other party or other named

9

family or household members.  (Fam. Code, § 6320, subd. (a).)  Disturbing the peace of the other party "refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party" and "includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."  (*Id.*, subd. (c).)

The DVPA provides that a restraining order to prevent the recurrence of domestic violence "may be issued . . . if an affidavit or testimony and any additional information provided to the court pursuant to section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).)  Such an order may be issued "based solely on the affidavit or testimony of the person requesting the restraining order."  (*Ibid.*)

The statute authorizes ex parte restraining orders (DVTROs) pending a hearing (§§ 6320–6327) and long-term restraining orders (permanent DVROs) issued after notice and hearing (§§ 6340–6347).  A DVTRO must be issued or denied on the same day the application is submitted to the court, unless the application is filed too late in the day to permit effective review, in which case it must be issued or denied the next court day.  (§ 6326.)  The noticed hearing on a permanent DVRO must be held within 21 days or, with good cause, within 25 days.  (§§ 242, subd. (a), 6327.)  The hearing may be continued once as a matter of right at the respondent's request, and it may also be continued for good cause at either party's request or on the court's own motion.  (§§ 245, subds. (a), (b), 6327.)  If the court grants a continuance of the hearing, any DVTRO remains in effect until the continued hearing, unless otherwise ordered.  (§§ 245, subd. (c), 6327.)

The grant or denial of injunctive relief is generally reviewed for abuse of discretion.  This standard applies to the grant or denial of a protective

10

order under the DVPA. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) But judicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the legal principles governing the subject of the action. (*Id.* at pp. 1264–1265.)

B. *Analysis*

A.M. argues that under the holding of *Nakamura v. Parker* (2007) 156 Cal.App.4th 327 (*Nakamura*), the trial court was divested of discretion to deny the DVTRO because it was required to assume the truth of her evidence and she made a facially adequate showing of abuse. We agree that the trial court erred in finding A.M.'s evidence was legally insufficient to establish "abuse" as defined in the DVPA. We nevertheless disagree that this divested the trial court of discretion to deny the DVTRO. Even when a DVRO petitioner has made a facially adequate showing of past abuse on the papers, the trial court still has discretion to conclude that the circumstances do not pose enough of an immediate threat to warrant ex parte relief pending a noticed hearing. On this record, we cannot determine whether the court would have denied the DVTRO on this basis but for its error in finding an insufficient showing of abuse. Accordingly, we will reverse and remand the matter for further consideration.

We first conclude that A.M.'s evidence was sufficient to establish a prima facie case of abuse based on her declaration and the accompanying text and e-mail messages. A.M.'s allegations of abuse were not facially implausible. Because the trial court itself did not make a credibility determination, and the record before us does not disclose that the court had any basis to doubt A.M.'s credibility in ruling on the papers at this initial

11

stage of the proceedings, we must assume the truth of A.M.'s evidence.[4] (See *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498–1499.) We also agree with the trial court that much of A.M.'s evidence reflected mere disagreements and heated arguments between her and R.Y. over the fairness and terms of the MSA. Nevertheless, A.M. also submitted sworn and sufficiently detailed evidence that R.Y. shamed and pressured her into having sex during their marriage, engaged in unwanted sexual conduct with her in their daughter's presence, belittled and berated her constantly, repeatedly yelled at her in their daughter's presence scaring both of them, showed up unannounced at her residence on several occasions after the separation, insisting on hugging A.M. and their daughter without their consent, barraged A.M. with texts accusing her of being a neglectful wife and a greedy person, refused to abide by the provisions of the MSA regarding visitation and A.M.'s continued employment, and on one occasion grabbed A.M. forcefully.

Taken in its totality, this evidence was enough to make a prima facie showing that R.Y. disturbed A.M.'s peace by destroying her mental and emotional calm. (§ 6320, subds. (a), (c); see also § 6301, subd. (d) [court must consider totality of circumstances]; *Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1176 ["threats that do not directly refer to physical violence or cause reasonable fear of bodily harm may still constitute harassment or disturbing the peace of the recipient"]; *id.* at pp. 1178–1179 [court must consider totality of circumstances].) Although the trial court could conclude otherwise after

---

[4] We recognize that in some circumstances, the family court may already have sufficient familiarity with the parties and the issues to make a credibility determination at the DVTRO stage.

12

opposition and an evidentiary hearing, A.M. at least carried her initial burden of making a facially sufficient showing of abuse at the DVTRO stage.

Even so, this did not necessarily compel the trial court to issue a DVTRO. In *Nakamura*, the trial court summarily denied a DVRO petition without an evidentiary hearing on the same day it was filed. The trial court concluded that the facts set forth in the petition did not provide a legal basis to issue the order. (*Nakamura, supra*, 156 Cal.App.4th at pp. 332, 333.) On appeal, the petitioner (Nakamura) argued "that the denial of her application for a temporary protective order, summarily and without a hearing, which had the effect of dismissing her entire action, constituted an abuse of discretion." (*Id*. at p. 332.)

The Court of Appeal agreed that because Nakamura's petition was not jurisdictionally defective, it could be summarily denied without a hearing only if the facts she alleged did not constitute "abuse" within the meaning of the DVPA. (*Nakamura, supra*, 156 Cal.App.4th at p. 337.) The court also concluded that Nakamura made a factually adequate showing of abuse assuming the truth of her evidence. (*Ibid*.) The court concluded: "*The* [*trial*] *court could have deferred ruling on her application until a noticed hearing could be held, but only if, as does not appear to be the case, it had reason to believe continuing the matter for a hearing would not jeopardize her safety*. (§ 6340, subd. (a).) In any event, the facial adequacy of Nakamura's factual allegations to show that she was 'abused' within the meaning of the DVPA operated to divest the court of discretion to summarily deny her application. Because the peremptory denial of relief without a hearing exceeded the discretion vested in the judiciary by the DVPA, the trial court's ruling must be deemed an abuse of discretion." (*Nakamura*, at p. 337, italics added.) Thus, *Nakamura* may be read to suggest that even if the allegations of abuse

13

are sufficient, the court may elect to "defer" a ruling on the DVTRO until the noticed hearing as long as it determines such a delay would not jeopardize the petitioner's safety.

For several reasons, we do not agree with this conclusion, although we ultimately reach a similar result by a different route. First, the court may not "defer" a ruling on a request for DVTRO until the evidentiary hearing because the statute explicitly states that a DVTRO must be issued or denied on the same day it is filed or the next court day. (§ 6326.) A deferral of the ruling would have the same effect as a denial: there would be no temporary restraining order in place pending the noticed hearing. But the DVPA requires the court to state reasons for denying a DVTRO. (§ 6320.5, subd. (a) ["An order denying a petition for an ex parte order pursuant to Section 6320 shall include the reasons for denying the petition."].) If the court were merely to defer a ruling on the DVTRO until the noticed hearing on the permanent DVRO, it would effectively be denying the DVTRO without giving the required statement of reasons. We therefore disagree with *Nakamura* to the extent it may be read to suggest that courts may defer a ruling on a DVTRO request until the noticed hearing.

Second, *Nakamura* cited section 6340, subdivision (a) as the sole authority for its conclusion that a court may defer a ruling if it has "reason to believe continuing the matter for a hearing would not jeopardize [the petitioner's] safety." (*Nakamura, supra*, 156 Cal.App.4th at p. 337.) But this subdivision says nothing about deferring a ruling on a DVTRO or continuing the matter for a hearing. It provides in relevant part: "The court may issue any of the orders described in Article 1 (commending with Section 6320) *after notice and a hearing*. When determining whether to make any orders *under this subdivision*, the court shall consider whether failure to make any of these

14

orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a)(1), italics added.) By its terms, this subdivision only governs the court's decision whether to grant a permanent DVRO *after* notice and hearing, not whether to defer a ruling on a DVTRO *until* the hearing.

We nevertheless agree that the pertinent provisions of the DVPA do not compel the trial court to grant a DVTRO whenever the petitioner has made a facially sufficient showing of past abuse. Section 6300, subdivision (a) provides that an order under the DVPA "*may be issued*" upon "reasonable proof of a past act or acts of abuse." (Italics added.) Section 6320, subdivision (a) similarly states that the court "*may issue* an ex parte order" enjoining contact with the other party. (Italics added.) "Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority." (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1237.) Section 6301, subdivision (d) further states that "[t]he court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief." Thus, we conclude that a trial court does have discretion to deny a DVTRO based on the totality of circumstances even if the petitioner has made a facially sufficient showing of abuse within the meaning of the DVPA.

Whenever a statute grants discretion to a court, however, it must be exercised consistent with the principles and purposes of the governing law. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 135.) And when the court declines to exercise its statutory discretion, its statement of reasons should reflect consideration of the underlying purposes of the statute. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 893.) It follows that whenever a court declines to grant a DVTRO to a petitioner who has made a

15

facially sufficient showing of abuse, its statement of reasons must reflect consideration of the fundamental purpose of the DVPA to prevent recurring acts of domestic violence. (§ 6220.)

More specifically, we hold that a trial court has discretion to deny a DVTRO to a petitioner who has made a prima facie showing of past abuse if it reasonably concludes based on the totality of circumstances that a DVTRO is not necessary to protect the petitioner or others for whom the petitioner is seeking protection from further acts of domestic violence pending the noticed hearing. Such a discretionary ruling would be consistent with the basic purpose of the DVPA. (§ 6220.) If this is the reason for the court's decision, however, it must be affirmatively stated in the order denying the DVTRO.[5] (§ 6320.5, subd. (a).) The court should carefully consider the seriousness and recency of the past abuse, whether it was an isolated incident or pattern, the likelihood of recurrence, the nature of the parties' relationship, the immediacy and seriousness of any threat, any changed circumstances, and any other relevant factors.

We now apply these principles to the case before us. As we have explained, the trial court erred by concluding that A.M. failed to present reasonable and sufficiently detailed proof of past abuse. Moreover, absent a sufficient basis for finding that A.M.'s allegations of abuse were not credible, the trial court's explanation that the alleged abuse occurred in the context of disputes over "dissolution and child custody/visitation" was not a proper

---

[5] The Judicial Council form used by the trial court has check boxes with preprinted reasons for denying a DVTRO, but the form does not include language for the court to find based on the totality of circumstances that a DVTRO is not necessary to protect the petitioner or others for whom the petitioner is seeking protection from further acts of domestic abuse pending the noticed hearing. (Judicial Council Forms, form DV-109.) The Judicial Council may wish to consider revising the form to provide such an option.

16

reason to deny the DVTRO. Although we recognize that DVRO petitions are sometimes used for tactical purposes in family law cases, the court may not deny ex parte relief at the DVTRO stage solely because otherwise sufficient allegations of abuse may have arisen in the context of a family law dispute. Thus, the trial court abused its discretion by failing to state proper reasons for denying the DVTRO.

On this record, however, we cannot determine whether the trial court would have denied the DVTRO for other valid reasons if it had found the allegations of abuse to be sufficient. The only reasons the trial court gave for denying the DVTRO related to the sufficiency of A.M.'s evidence to establish past abuse. We cannot imply other findings in favor of the order that were not made expressly because the statute itself requires express findings. (See, e.g., *Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197–198; *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078; *In re Adam L.* (2013) 219 Cal.App.4th 452, 463.) At the same time, in the highly unusual posture of this case involving a DVTRO that was denied nearly a year ago and a noticed hearing on the permanent DVRO that has been continued to August 2025, it would be inappropriate for us to direct the trial court to enter a DVTRO when circumstances may have changed since its original ruling. Accordingly, we will reverse the order and remand the matter to the trial court for further consideration of the DVTRO based on the totality of circumstances, including any events occurring since the original ruling. We express no view on how the court should exercise its discretion on remand.[6]

---

[6] Because we are reversing the May 17, 2024 order denying a DVTRO, we need not consider A.M.'s argument that the trial court separately erred by denying a DVTRO pending the outcome of this appeal at the hearing on June 6, 2024. We note, however, that even assuming the June 6, 2024 order was appealable, A.M. never filed a separate notice of appeal from this order.

17

## DISPOSITION

The May 17, 2024 order denying the DVTRO is reversed and the matter is remanded for further proceedings.  A.M. is entitled to recover her costs on appeal.


                                        BUCHANAN, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.

18